By the Court,

Nelson, C. J.
The material question here is, whether want of probable cause in the criminal proceedings against the plaintiff was sufficiently established on the trial of this cause. The leading principles involved in actions for malicious arrest and prosecutions, have been so often and so ably discussed both in England and this country, that they are extremely well settled. When there is no dispute as to the facts relied on, the question of want of probable cause is for the determination of the court; when they are controverted, or the preponderance of the testimony doubtful, it belongs to the jury, under proper advice as to the law (1 T. R. 545; 2 Wendell, 424, and cases there cited). The want of probable cause is the essential ground of the action, and must be substantially and satisfactorily proved, and can not be implied (1 T. R. 545; 1 Wendell, 140).
It appears to me, the main question we have supposed involved in this case, turned altogether upon another which does not seem to have received the consideration that it deserved in the charge of the learned judge, namely, whether there had been a termination of the partnership concern between the plaintiff and the firm of J. Wood & Co. before’ he gave the accountable receipt to Sowden. If there had been, the act of the plaintiff was not only without authority in respect to the other members of the firm, but may have been a forgery on the part of the plaintiff. If there had not been a *131 termination, then there was no pretext whatever for the charge of a criminal offence. After the dissolution of a firm, one of the partners has no more right to use the partnership name for his own purposes, than ii the firm never had existed. This is an obvious proposition. The authority he possessed to use it, grew out of the partnership contract; within the scope of it, one of the members of the firm could bind the whole. On the dissolution of the contract, the authority of course ceasedi It is true until due notice of the termination of this joint interest and authority, third persons who have innocently trusted the firm, honestly supposing it still continued, and having no good reason for believing the contrary, are not to suffer; and in such a case, where the security of the firm is given by one even after dissolution, as between the two innocent parties, the copartner, and the person confiding in the security, the former is most at fault; he should have seen to it, that the proper notice had been given to the public or individuals) and for this neglect the firm is still responsible. The authority of the copartners shall not be repudiated, because it would result in the perpetration of a fraud upon third persons. But this rule has nothing to do with the situation of the parties in respect to each other. It affords no authority or even pretext of authority, for the conduct of the one who thus pledges the security of the firm after dissolution. As to him, there is no firm, and no authority; there is not, as to third persons privy to it, much less can there be as to the members themselves.
Now, from the foregoing view, the question arises out of the statute against obtaining goods under false pretences, which was much discussed upon the argument, and by the learned judge in his charge; and the particular circumstance, namely, whether the defendant willfully withheld from the district attorney the fact that Sowden had previously made known to him that lie did not trust the goods to the plaintiff upon the representation made by him that he was a member of the firm, but upon previous information derived from Wood, and upon which particular circumstance the judge put the case mainly to the jury, if important at all, was certainly not controlling. Because, the facts disclosed to the district attorney, whether those [229] supposed to be suppressed existed or not, fairly presented a well grounded suspicion of the perpetration of a crime by the plaintiff, if a dissolution had in fact taken place. The circumstance that tlie law officer advised an indictment for a particular offence, and the grand jury found accordingly where the suppressed facts became material, and induced an acquittal, should not operate to the prejudice of the prosecutor. The advice could be of no importance, if the facts in truth afforded a reasonable ground of suspicion of a crime; the defendant might rely upon them for his justification; he had a right, and as a good citizen was bound in duty to go before the grand jury and disclose the facts upon his own responsibility; and if an acquittal followed for a defect in the indictment, or a misconception of the nature of the offence, a different one being charged from what the testimony warranted, it afforded no test of the innocence of the prisoner, or want of probable cause for the complaint. He may still be guilty of the crime imputed to him.
Forgery is “ the fraudulent making or alteration of a writing to the prej udice of another man’s right;” or, in other words, “ a false making, a making, malo animo, of a written instrument for the purpose of fraud and deceit” (2 Russell, 292; 4 Black. Comm. 247; 2 East, 852; 2 Leach, C. L. 785). Now, there can be no doubt if the plaintiff, never having been a member of the firm of J. Wood & Co., had signed the partnership name to the accountable receipt, the act would have been a forgery; the fraudulent intent would have been implied unless rebutted. In this case, the defence to an indictment for forgery must have been placed upon the authority to use the name of the firm (this is frequently resorted to in cases of forgery); the plaintiff, in the *132 first instance, might have made out the defence hy proving the previous existence of a partnership; but .this would not be conclusive. The fact of partnership at the time might be disputed, and contradicted; and if the jury should have been satisfied that it had been dissolved by voluntary consent, he must have been in great peril of conviction. There would have [230] been an end of the authority; he would then stand on the footing of one who never had belonged to the firm.
As to the offence of obtaining goods by false pretences: By the 2 Revised Statutes, 677, § 53, every person who, with intent to cheat or defraud another, shall designedly by color of any false token.in writing, or by any other false pretence, &c., obtained from any person any money, personal property, or valuable thing, upon conviction, &c. The old statute was as follows: “ Every person who shall knowingly and designedly, by false pretence, obtain from any other person any money, goods, &c., “ with intent to cheat or defraud any person,” &c. The 30 Geo. 2, ch. 24, and also the 7 Geo. 4, eh. 64, provide that all persons knowingly, &e. who by false pretences should obtain from any person goods, &c., “ with intent to cheat or defraud any person or persons of the same,” that is, of the goods, Sec., so obtained by the falsehood and deception. The object of the English statutes (and ours were taken from them) was to protect persons from being defrauded of their money or goods, by the use of false tokens or pretences, which were frequently used to induce the weak and unsuspecting to part with them without an adequate consideration; The person from whom the goods are obtained must be imposed upon by the false means to constitute the offence. Lord Kenyon observed in Young v. The King (3 T. R. 98), that the statute of 33 Hen. 8, c. 1, required a false seal or token to be used to bring the person imposed upon into the confidence of the other; but that being found to be insufficient, the statute of 30 Geo. 2, ch. 24, introduces another offence, describing it in terms extremely general. Ashurst, J., in the same case remarked, that the statute (30 Geo. 2) created an offence which did not exist before, &c. The legislature saw that all men were not equally provident,, and this statute was passed to protect the weaker part of mankind. The materiality of the pretences which are laid in the indictment and the necessity of proving on the trial that they influenced the mind of the person to part with his property, clearly show that he must be defrauded, to bring the case within the statute (11 Wendell, 557; Russ. & Ry. 190; Rex v. Hill, East, T. 1811, Bayley [231], J.; 2 Russell on Cr. 311). The testimony of Sowden, therefore; necessarily produced an acquittal on the indictment found against the plaintiff. Though if he had not supposed himself secure in the liability of the firm for the goods obtained by the plaintiff he would probably have not found much difficult)' in giving a direction to the prosecution that would have resulted in a conviction. The goods were obtained on the strength of the partnership name; but Sowden having, as he supposed, a previous knowledge of the existence of the firm from Wood, Another partner, did not ask nor did the plaintiff make any representations on the subject, but simply signed the accountable receipt in the partnership name. It could not be said, therefore, that Sowden was defrauded by false pretences, within the meaning of the statute; there must be some'affirmative act inducing the confidence of the person defrauded.
But though the plaintiff was not legally guilty of the offence charged, he was morally guilty; he suppressed the truth when the goods were delivered, ,and asserted a falsehood afterwards, by means of which he obtained them. We have the testimony of Sowden that he would not have trusted thefii to the individual responsibility of the plaintiff, and they were, therefore, procured by the concealment of the fact, that the partnership had been dissolved; and it is more than probable, if he had signed the receipt in his own name *133 the goods would have heen withheld till the partnership security had been formally given, notwithstanding the previous information of Wood. In Story's case (2 Russell on Cr. 302; Russ. & Ry. 81), the prisoner made no other representation to obtain the money on the order than to write his own name on the back of it. The judge at the trial advised a conviction, if the jury believed, from his conduct, he fraudulently assumed a character which did not belong to him, although he had made no false assertions. He had received out of the post office by mistake a letter directed to a person of the name of Sforer, and which contained an order for one pound on the postmaster. On presenting it for payment, he was told he must write his name on the back of it, which he did, and received the money. All the judges were afterwards consulted in the case, and they held the pris- [232] oner properly convicted of obtaining the money by a false pretence, because, by presenting the order for payment and signing it at the post office, he represented himself as the person named in the order. Now, in the case under consideration, if the plaintiff had signed and offered the partnership security as an inducement to Sowden to trust the goods to him without any other representations, and had received them accordingly, upon the above authority he would have been guilty. They would have been obtained by the false pretence that he was a partner, and authorized to pledge the security of the firm; or if not a partner, that he had authority to pledge it. In addition, therefore to the clear moral guilt of the prisoner—the procurement of the goods by actual legal fraud—the distinction upon which the case is taken out of the statute, is extremely nice, and would not readily, if at all, occur to one unpracticed in the law. Not that there was no attempt to commit the offence by the plaintiff—for that was clearly undertaken—but that it so happened, the person upon whom the attempt was made, having a previous knowledge of the false fact or pretence, was not therefore influenced by it when used by the prisoner; or rather he assumed a fact to be true, by means of this previous knowledge, which the prisoner knew to be false, and the falsehood of which he intended to communicate, and did so, by signing the receipt in the partnership name. As the false pretence was not, however, necessary under the circumstances, it did not have the effect required by the statute, and therefore the offence was not technically committed. The party acted upon his previous knowledge, and not upon the representations or conduct of the plaintiff.
Upon this view of the case, I confess I am unable to say there was a want of probable cause assuming all the facts to have been known to the prosecutor which were disclosed upon the trial. Here is moral guilt enough, and an exemption from legal guilt only upon a very nice and accurate discrimination of the facts and the law—such as can not be expected or required of a layman.(b) I can not say there was no reasonable foundation for [233] the prosecution. The goods were obtained by the false representation and conduct of the plaintiff by a suppression of the truth, and therefore not exactly within the statute, but so near to it that there existed a reasonable and well grounded suspicion of guilt; and the prisoner might better congratulate himself upon the good fortune of his escape from conviction of the crime, through the technicalities of the law, than to endeavor to realize a profit on the supposition the prosecution was commenced and conducted without reasonable foundation. The case of Rex v. Stratton and others (1 Camp. 549, n), before Lord Ellenborough, contains a principle quite appli *134 cable to this case. That was an indictment for a conspiracy for an alleged malicious prosecution of another under this. statute. Lord E. directed an acquittal on the ground, that the act for which the party had 'been indicted came so near obtaining money upon false pretences , that the prosecution could not he considered as being without any reasonable or probable cause; and consequently the ground of the conspiracy failed.
But while I am of opinion this action for a malicious prosecution can not he maintained upon the safe and established principles which govern it, I should regret if the defendant should escape without proper responsibility for the cruel, unnecessary and oppressive manner in which he caused the execution of the warrant of the governor of Vermont. This feature in the case has undoubtedly imparted much of the importance that has been justly attached to the suit; for without it, I can not think an action for a malicious prosecution would have been thought of. An action for trespass, assault and false imprisonment should have been brought, and was the appropriate remedy for the excess of authority and abuse of the process (c) (1 Chitty, 185; 6 Bacon, 556, note, tit. Trespass; 2 Saund. Pl. and Ev. 515). If any doubt has heretofore existed whether case might not also be sustained, it is, I apprehend, removed by the revised statutes (2 R. S. 553, § 16). The case of Rogers v. Brewster (5 Johns. R. 125), seems also an authority independently of the revised statutes. The declaration should have contained a count [234] for the abuse of the process, and which would have reached this particular objectionable conduct of the defendant, so highly outrageous and indefensible. The court would probably yet permit a count to be added covering this ground of action.
On the whole, I am of opinion that a new trial should be granted; the costs to abide the event.
Mr. Justice Cowen, concurred.
Mr. Justice Bronson. The judge charged the jury very much at large; and although some of his remarks, when taken separately, may not be entirely accurate, yet, looking at the whole charge, it was I think, sufficiently favorable to the defendant. Believing that the jury were not misled by the remarks of the judge, I am unable to concur in the order for a new trial.
Whereupon the court ordered a new trial; the costs to abide the event.

 Good faith merely, in making a criminal charge against another, is not sufficient to protect the party from liability. There must be a reasonable ground of suspicion, supported by circumstances sufficient to warrant a cautious man in the belief that the person charged was guilty, +o make out such a probable cause as will be a defence to an action for a malicious prosecution. Hall v. Suydam, 6 Barb. 83; 13 Iredell, 320; 17 Ala. 27.

 Ragsdale v. Bowles, 16 Alabama, 62,