THOMAS SCANLAN *v.* RICHARD B. COWLEY.

In an action for malicious prosecution, the question of probable cause does not depend upon an offence having been committed, nor upon the guilt or innocence of the party accused.

It is enough, if the circumstances shown were sufficiently strong to justify a cautious man in the belief that the accused was guilty of the charge made, and that the prosecutor, at the time, honestly entertained such a belief.

APPEAL from a judgment, entered at special term in favor of the plaintiff, upon a trial, by consent of parties, before a judge without a jury. The defendant appealed. The facts appearing in the case are stated in the opinion of Judge HILTON.

*William R. Stafford,* for the appellant.

I. There was no proof whatever to sustain the allegation of the complaint, that the plaintiff was tried before the recorder on the charge of embezzlement. The complaint was for " embezzling fifteen dollars." The charge tried was petit larceny in stealing ten dollars.

II. Nor was there any proof to show that the defendant caused or procured the arrest for the charge upon which the plaintiff was tried.

III. The plaintiff, in order to sustain his action, was bound affirmatively to show not only express malice, but an entire want of probable cause. In this he wholly failed. His own testimony affords " a reasonable suspicion, founded on circumstances warranting a belief that he was guilty of the offence charged." *Burlingame* v. *Burlingame,* 8 Cowen, 144; *The People* v. *Hennesy,* 15 Wend. 147; Warton's Treat. on Crim. Law, §§ 1936, 1942; 10 Wend. 296; 5 Den. 76.

IV. The truth of the *facts* stated in defendant's affidavit was clearly proven, and those facts, even if insufficient to convict the plaintiff criminally of the offence charged, fully exonerate the defendant from liability in this action. *Bulkley* v. *Keteltas,* 2 Sel-

den, 384; *Foshay* v. *Ferguson*, 2 Denio, 617 ; 2 ·Wendell, 426 ; 7 Cowen, 281; 1 Wendell, 140 ; 4 E. D. Smith R. 9–12.

V. The verdict should be set aside as opposed to the weight of evidence. The plaintiff's own statement is improbable on its face, and is supported by no other testimony.

.VI. The damages awarded were, under the circumstances, excessive.   At most the plaintiff was entitled to nominal damages. His conduct cannot commend itself to the sympathy of the court.

*James M. Sheehan*, for the respondent.

I. The proof is sufficient to sustain the allegations in the complaint.   Want of probable cause is shown when the complainant knew the other party claimed a right to property.   14 Wend. 192; 7 Cowen, 281.

II. Action lies for causing another to be brought before a justice and discharged.   In a legal sense, any act done purposely to the injury of a person, is malicious.   2 Johns. 203; *Commonwealth* v. *Snelling*, 15 Pick. 321, 350.

III. Affidavit of complaint is admissible against defendant. Proof of arrest also admissible.   1 Phil. on Ev. (1st edition,) pp. 259, 380.

IV. Prosecution and acquittal of plaintiff evidence of malice. Record conclusive evidence of acquittal.   Phil. on Ev., C. & H., part II, pp. 42, 10, 43 and 47 ; Willes, 520; 4 Hawks, 83 ; 1 T. R. 247.

V. In an action for malicious prosecution, what facts and circumstances amount to probable cause, is a question of law; whether they exist in the particular case is a question of fact. *Stone* v. *Croker*, 24 Pick. 81.

HILTON, J.—The defendant is a manufacturing jeweller, and in the fore part of August, 1855, employed the plaintiff, as journeyman, to work for him, at the wages of $5 per week.   While thus employed the plaintiff offered to procure for the defendant the jobbing work of a Mr. James Turner, who did business in Eighth avenue, in this city, and the defendant agreed that if this

Scanlan v. Cowley.

work was procured, he would give the plaintiff $6 per week wages. This arrangement was consummated, and the plaintiff was in the habit of calling at Turner's shop, on his way down to the defendant's place of business, getting the work to be repaired, and leaving it again, when repaired, on returning home in the evening. At this time the defendant had several workmen employed, and the repairing for Turner was done by all in the shop, and not by the plaintiff exclusively. The plaintiff subsequently moved his residence, and thereafter the defendant was in the habit of sending his other workmen for Turner's jobbing. It seems that the plaintiff was employed in the shop of the defendant like the others there, and that his wages were paid weekly, by the defendant allowing him to collect the amount which, on each Saturday night, might be owing to the defendant for the jobbing thus done for Turner, or from one Baker, for jobbing done in a similar manner. If the amount thus owing amounted to more than the plaintiff's wages, the balance was carried to Turner's or Baker's account, as the case might be, for the following week. If the amount was less than the plaintiff's wages, then the plaintiff collected and retained the whole that was due, and received from the defendant the difference between that and $6; or if the plaintiff did any overwork during the week, he was allowed to collect it also, or the difference was made up to him in the same way. In a similar manner the other workmen were paid their wages, by collecting the amounts due from the defendant's customers, and this course seems to have been adopted by the defendant as a matter of convenience. The defendant's shop expense book, and also his pass book with Turner were put in evidence, from which it appeared that the plaintiff was paid his wages, or was permitted to collect them in the manner above stated, and in no case does it appear that he ever collected and retained to his own use, from Turner, more than was due to him at the time from the defendant, for his past week's wages, as, in several instances, when Turner owed for jobbing more than this, the balance was charged in the pass book with the work which was done for Turner by the de-

fendant in the week succeeding. On August 12, 1856, the defendant discharged the plaintiff from his employment, paid him in full, and he then left. On the 23d the jobbing bills of Turner and Baker amounted to $23.27, and, on going to collect them, he found that the plaintiff had been to Baker on the 15th, and collected what was then due, and on the 16th had collected of Turner $10 in cash, and taken a gold locket, worth $5, on the defendant's account. This collection, it is alleged by the defendant, was entirely unauthorized, and, on September 17 he made a complaint before Police Justice OSBORNE, against the plaintiff, for embezzlement in thus collecting from Turner; and at the time of the complaint Turner made an affidavit of the fact that he so paid the money to the plaintiff. On this complaint the plaintiff was subsequently arrested, tried and acquitted; and this action was then brought by him against the defendant to recover damages for such prosecution, upon the ground that it was malicious and without probable cause.

Other grounds of action were also stated in the complaint, but seem to have been abandoned at the trial; and on the appeal it was not claimed by the respondent that he was entitled to recover for any other cause than the malicious prosecution alleged.

In thus stating the facts of the case, I have given what I consider to be the fair import and substance of the evidence produced at the trial, but it is proper I should add that the testimony on the part of the plaintiff, and which consisted of the evidence of himself, and of Sheehan and Baker, as witnesses, went to show that the agreement made by the plaintiff with the defendant was to the effect that this jobbing work of Turner and Baker was to be charged to the plaintiff, and done for him in such a manner as to enable him to receive a profit upon it. But a careful examination of the plaintiff's testimony shows that although this was the view he desired to impress upon the court at the trial, yet he did not actually understand the arrangement to be other than I have stated. He says, " The agreement was, he (defendant) was to do the work I was doing, (i. e., the work

of Turner and Baker which the plaintiff had been doing previous to going into the defendant's employ), for me; *Cowley was to do it for me;* Cowley's boy went for the work, and took it home when it was done; I always received the money for it; Cowley kept a separate book, with the jobs all combined, and if it amounted to more than $6 per week, *he would let me collect $6 of it,* and put the balance over on my next week's account; I always received the money from Turner and Baker and used it as my own; when I made this arrangement *I turned them* (Baker and Turner) *over to Cowley, and he did the work* and made the charges for *it against me.* I don't know if he made any bargain with Turner or Baker as to the prices; it was this money I collected from Turner and Baker, after I left Cowley, that I was arrested for, charged with embezzling; Cowley did not discharge me; the moneys collected were $23; *they were due to Cowley for the work;* it was due by me to him; when Turner and Baker's bills were less than $6 per week, Cowley paid me the balance to make it $6; *if their bills were $10 per week, I was entitled to the whole of it; I never collected over $6 per week of them;* when their bills amounted to $6, Cowley paid me nothing; I don't know if Cowley ever collected any from them himself; he continued to do Turner's work after I left."

Upon his own statement, it thus appears that he turned over his customers, Turner and Baker, to the defendant, who did their work, and when their bills amounted to more than his weekly wages he was *allowed* by the defendant to collect that amount, and the balance was carried over to his next week's account. The pass book with Turner shows that this was not so—the balance was charged, as I have stated, to *Turner's* account for the week following. The plaintiff also says, that if their bills amounted to $10 per week, he was entitled to the whole of it, and in the next breath he adds: "I never collected over $6 per week of them." He also admits that the $23 he collected after he left defendant's employ "was due to Cowley for the work;" and then he adds: "It was due by me to him."

All this, to my mind, shows that the defendant's version of the

arrangement is the true one; at least, whether it is so or not, it cannot be denied that the clear weight of the evidence is against the version of it given by the plaintiff, and I think the judge, before whom this action was tried, by consent, without a jury, erred in finding that the plaintiff was maliciously and without probable cause arrested by the defendant on a charge of embezzlement. The circumstances in themselves were sufficiently strong to justify a cautious man in the belief that the plaintiff was guilty of the offence charged, (*Munns* v. *Nemours*, 3 Wash. C. C. 37; *Fohsay* v. *Ferguson*, 2 Denio, 617), and, as was said by this court in *Gordon* v. *Upham*, (4 E. D. Smith, 9), this amounts to probable cause; and although the plaintiff may have been entirely innocent of the charge, yet it is a sufficient answer to an action of this nature, for the defendant to show that he believed the plaintiff guilty at the time the charge was made, (*Foshay* v. *Ferguson, supra*), and that he had a well grounded suspicion of his guilt. *Baldwin* v. *Weed*, 17 Wend. 224.

It is quite immaterial whether this question of probable cause is regarded as one of fact, depending upon conflicting evidence, or as one of law arising upon the clear weight of evidence, in favor of the view I have taken, of the testimony at the trial. The result is the same in either case, as the defendant has excepted to and appealed from the finding of the judge in this respect, (*Bulkley* v. *Keteltas*, 2 Seld. 384), and in either aspect the judgment, in my opinion, is erroneous.

DALY, First Judge.—I do not understand that it is essential to the existence of probable cause, that an offence should have been committed. In *Swain* v. *Stafford*, (3 Iredell, 289; 4 id. 392), no offence had been committed. The property supposed to have been stolen had not been taken by any one, and in fact had never been out of the defendant's possession; yet, the defendant having received such information as induced a belief of the plaintiff's guilt, it was held that there was probable cause, and that an action for malicious prosecution could not be supported. The question of probable cause does not depend upon whether

an offence has been committed, nor upon the guilt or innocence of the accused, but upon the prosecutor's belief of the truth of the charge made by him. *Siebert* v. *Price*, 5 Watts & Serg. 438. If circumstances are shown sufficient to warrant a cautious man in the belief of the truth of the charge he makes, it is enough. *Munns* v. *Nemours*, 5 Wash. C. C. 37. In this case I think that the plaintiff failed to make out a want of probable cause, and I agree that the judgment should be reversed.

BRADY, J., (dissenting).—I do not concur in the conclusion that the judgment should be reversed. Assuming the facts to be as stated by Judge HILTON, the plaintiff was not guilty of any offence, and no offence had in fact been committed. The plaintiff had, on the assumption that the facts stated by Judge HILTON are proved, been guilty of a fraud only in collecting money, without authority, which was due to another. He had been discharged by the defendant, and, at the time the collection was made, was neither the servant nor the clerk of the defendant. Where an offence has in fact been committed, probable cause would be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offence with which he is charged; but this rule does not apply where no offence has in fact been committed. When a man seeks to secure the arrest of another, he must first satisfy himself that an offence has been commited. His ignorance of the law will not excuse him if he make a mistake. The defendant knew that the plaintiff was not his servant when the money was collected. His affidavit did not disclose that fact, however, but from its peculiar phraseology left it to be inferred that the plaintiff was in his employment when the collection was made. The fact that he was discharged by the defendant is suppressed, and I think it was designedly suppressed in drawing the affidavit on which a warrant was issued. There can be no probable cause which will justify the arrest of a man until an offence has been committed. If a man arrest another on suspicion that he has committed a

felony, and none in fact has been committed, he must respond in damages for the illegal arrest; (*Holley* v. *Mix*, 3 Wend. 350); but if an offence has been committed, the question of probable cause is then the controlling element in the case.

Judgment reversed and new trial ordered—costs to abide event.