## WILLIAM S. DRIGGS v. OSCAR A. BURTON.

*Malicious Prosecution. Nolle Prosequi. Probable Cause. Malice. Evidence. Practice. Judgment. Exception.*

Where the entry of *nolle prosequi* is a mere act of the prosecuting attorney, and no action of the court is had upon it, the entry would not be an end of the proceeding, and for that reason would not warrant any action for malicious prosecution, which could not be had before the proceedings were at an end.

But where the magistrate made such entry upon his files, and the respondent was actually discharged and the proceeding ended, as the formal record if made out in full would show, it was *held* that the prosecution was at an end far enough to warrant such action.

Notwithstanding the respondent and his counsel suggested to the State's attorney that *nolle prosequi* should be entered under the circumstances, and he did so, it was *held* that no such consent of the respondent appeared as would be necessary to affect the plaintiff's right to recover for malici-us prosecution.

The alleged malicious suit was a prosecution for perjury, and notice of it appeared in a public journal : *held* that it was proper for the plaintiff's counsel to read this notice to the jury on the trial of the action for malicious prosecution.

The plaintiff introduced testimony showing that he conceded, (shortly after he gave the evidence on account of which the perjury prosecution was instituted, and upon his attention being called to a fact which showed that that evidence could not be true,) that it was not true. *Held* that the admissibility of this testimony as bearing on the question of probable cause, depended on the fact whether there was any evidence tending to show that the defendant knew of the facts disclosed by it, and the jury found such knowledge from the evidence. In this case, there being no evidence that the defendant or his attorneys knew of such facts, the admission of the testimony was error.

Probable cause means such a state of facts and circumstances as would induce men of ordinary prudence and conscience to believe the charge to be true.

What constitutes probable cause in actions for malicious prosecutions is a question of law for the court.

Driggs *v.* Burton.

All inferences to be drawn from facts undisputed or found by the jury to exist, are upon this subject inferences of law and not of fact, and are to be drawn by the court and not by the jury. This rule is peculiar to actions for malicious prosecutions. In practice a true application of the rule seems to require that if none of the facts are in dispute, the question of probable cause arising upon them should be decided by the court as a question of law, without the intervention of a jury at all. That if some of the facts are undisputed and others are in controversy, and the question of probable cause cannot be determined upon the undisputed facts without determining the existence of those in dispute, then the case should be presented to the jury by stating which of the dispu'ed facts are to be passed upon and how, so that by determining the mere existence or non-existence of them the question of prob-able cause or want of it will be determined according to the view of the court.

The charge in this case, although it stated correctly what in law would constitute probable cause, was erroneous in that it submitted to the jury to decide not only upon the existence of the facts, but whether upon the facts they should find to have existed, there was probable cause as defined by the court.

Want of probable cause and malice are each essential to the cause of action, and each must be proved, and proof of neither will as a matter of law supply proof of the other. Where the same facts would tend to show both, the evidence should be submitted upon the question of malice independently, and that question should not be left to depend upon or follow the finding upon the other.

In this case the whole testimony was set out in the bill of exceptions, and it was claimed that the supreme court could determine the question of the want of probable cause; but it was *held* that the belief of the defendant as to whether the plaintiff knowingly *or* mistakenly testified falsely, was a question which the court could not determine as a matter of law, therefore the case must be remanded to a jury to determine this fact.

When a plaintiff rests, the defendant may have judgment upon the case as it then stands, and that judgment is subject to exception. If against the plaintiff he may, by leave of the court, put in more evidence and vary the case, but would not then be entitled to keep the exception. If against the defendant and he excepts, and then puts in evidence that varies the case, and has a decision of the court upon the case as varied, he cannot keep his exception.

This was an action on the case for a malicious prosecution, as by the declaration stated, and was tried by the jury upon the general issue, at the September term, Chittenden county, 1870, PIERPOINT, Ch. J., presiding. Verdict for the plaintiff, $4,500.

The plaintiff introduced a certified copy of the record of the complaint, warrant and proceedings before John B. Hollenbeck, Esq., justice of the peace, in case *State* v. *William S. Driggs*, which is made part of the case.

Said Hollenbeck testified that he was, at the time of such proceedings, a justice of the peace and acting recorder of the city of Burlington, and that that was a copy of his record; that the plaintiff was brought before him July 22nd, 1868, and E. R. Hard and E. J. Phelps, Esqrs., appeared as his counsel; that the defendant, Burton, was not present, and that the case was continued from July 22d to July 23d, on the application of L. B. Englesby, Esq., State's attorney, to enable him to procure testi-

mony ; that on the 23d of July, the plaintiff and his counsel again appeared, and the defendant was not present ; that the plaintiff was anxious for a hearing, but on application of said State's attorney, stating that he wished to procure the attendance of the defendant and some witnesses from St. Albans, the case was further continued, by the justice, to July 25th, with the understanding, that if such witnesses could be sooner procured, the case should be heard in the meantime ; and that, on the morning of the 25th of July, said State's attorney entered a *nolle prosequi*, and no hearing was had—the plaintiff not being present, nor his counsel at the time.

E. R. Hard testified that said Driggs had arrived in town in the afternoon of July 22d, 1868, and had been in town but a short time, when he was arrested, upon said warrant, by L. A. Drew, constable, and that he and Mr. Phelps were then retained as counsel for Driggs ; that he had known Driggs for several years, and was counsel for Driggs in a suit then pending in the circuit court of the United States, for the District of Vermont, in favor of said Driggs against said O. A. Burton, and that Driggs had then come to Burlington, from his residence in Saginaw, (Michigan), in order to prepare his said cause for trial at the then pending term at Windsor. The witness further testified substantially as said Hollenbeck testified ; and stated that said Burton was present on the morning of the 24th, before the justice. I asked Burton who the witness was that was wanted, and he said it was E. A. Sowles ; and that he expected to prove by him that he (said Sowles) overheard a conversation or arrangement, between Driggs and Clark, that Driggs should swear for Clark and Clark for Driggs ; that he (Hard) then agreed to have the case lie and have it heard on the arrival of the train from St. Albans, which would be in at something past 9 o'clock in the evening ; that Burton started for St. Albans, whereupon witness went to the telegraph office and telegraphed Sowles to know if he was at home, and got a reply (which was produced) that he was, and about 9 P. M. he (Hard) went to the office of the justice and found no one there, and at about 10 o'clock met the State's attorney, who informed him that the case would be *nolle prossed* the next morning ; that Driggs was quite ill and left, and did not appear further.

Said Hard further testified that in August, 1865, there was an arbitration, between said Burton and A. M. Clark, in session at Burlington for a good many days — the arbitrators being Asahel Peck, Lucius B. Peck and Frederick E. Woodbridge, in which arbitration he was counsel for said Clark ; that said Driggs, on that hearing, was called and testified, as a witness for said Clark,

that he met said Burton and said Clark, with J. H. Burton, together at the house of said J. H. Burton, in the city of New York, on the evening of the 21st or 22d day of May, 1859; that he was positive about this from examinations which he had made of his papers and memoranda; that this testimony was given quite late in the afternoon; that Driggs had come in response to a telegram from Clark, and was put on as a witness soon after his arrival in Burlington, and out of order in the trial in order to allow him to leave; and that, after so testifying, he left the scene of the trial and went over to the American hotel; soon after which, Burton's counsel produced a letter, written by said Clark, and dated " New York, Monday, May 22d, 1859," and postmarked the 23d May, directed to said Burton, at Burlington, Vt., urging said Burton to come to New York; that the time for adjournment had then arrived, and the arbitrators and said Clark's counsel then went to the American hotel; that Driggs, with Clark and his counsel, was in said Clark's room at the American; that he (Hard) thought that two of the arbitrators—L. B. Peck and Woodbridge—were in said Clark's room; he judged so, because it was usual for them to come into that room; he could not recollect that Woodbridge was in the room, but he thought he recollected that L. B. Peck was; that neither Burton nor any of his counsel were present; [that on that occasion said Clark told Driggs about the production of said letter, before the arbitrators, as above stated, and that Driggs was not at first fully satisfied, after the examination he had made, that he was wrong in his testimony, but finally conceded that he was].

The foregoing, in brackets, was seasonably objected to by defendant's counsel, but the court admitted the same, to which the defendant excepted.

Said Hard further testified that there was not, on the trial, any formal withdrawal of this testimony of Driggs, but there was some laughing among the counsel about it; but he could not recollect that any conversation was had with Burton's counsel about it, and it was not further insisted upon, and the case never came to argument, the arbitration having failed by the death of said L. B. Peck; that it was not further claimed, during the trial, at any time, by Clark or his counsel, that Driggs' testimony was correct; that Driggs had no interest in the arbitration, and that it was very difficult to get him here.

On cross-examination said Hard further testified that said Driggs did not afterwards appear before said arbitrators, and that there was no announcement or statement made on the trial, or before the board of arbitrators, that said Driggs had made any

error or mistake in his testimony; that the matter testified to by Driggs, that he did so meet said parties at the time and on the occasion so testified to by him, was material as going to defeat a claim of $20,000 which Burton made in said arbitration against Clark, by showing that Burton was, on that date, in the city of New York and not in St. Albans.

Said Hard further testified that before the entering of the *nolle prosequi* before Justice Hollenbeck, he explained the matter to the State's attorney, admitting to him the inaccuracy of Driggs' testimony, but that it was given under a mistake, and that he offered to admit that Driggs testified as set forth in the complaint, and that his testimony was material, and that it was not true in fact.

L. B. Englesby testified that he was State's attorney of Chittenden county during the year 1868, and that in the spring or early summer of that year, said Burton came to him and stated the matter of said Driggs's testimony, and wanted him prosecuted for perjury, saying that Mr. Houghton, an attorney of St. Albans, took the minutes of Driggs's testimony before said arbitrators, and referred said Englesby to said Houghton for the testimony, and that said Houghton afterwards brought him said minutes, and they corroborated the statement of Burton; that Burton told him that Driggs was going to be in Burlington, but he could not say that Burton told him the reason of Driggs's coming; that the statute of limitations had nearly run upon the offence, and as he was about to be absent from the State, he made out the complaint and procured the warrant, and left them with V. P. Noyes, a brother-in-law of Burton, and a boarder at the American hotel, who would be apt to know when Driggs should arrive in town, and for him to hand the papers to the officer; Noyes was not a lawyer nor an officer; that upon his return from Chicago he was first informed of Driggs's presence by information of his arrest; that on the first appearance before the justice he told the justice that delay must be had to procure the attendance of said Burton, who was in New York; that the case was postponed, and he telegraphed Burton, in New York, who arrived, in answer thereto, on the 4 A. M. train of July 24; that said Hard came and stated to him (Englesby) that Driggs did swear as was stated in the complaint, but that it was by mistake, and that Driggs so told the arbitrators; and that he (Englesby) told Burton of what Hard had said, and told him (Burton) that upon such an admission and statement to the justice, the justice would most likely discharge Driggs; that Burton replied that he thought there could be proved by E. A. Sowles, of St. Albans, some collusion between

Clark and Driggs; and he told Burton if there was any other testimony, and if he thought he could procure testimony to show such collusion, he had better take the next train for St. Albans and get it and be back by the 9½ train of that evening; that Burton did thereupon go to St. Albans, and on his return told him (Englesby) that Sowles would not testify; that he had been an attorney for Clark, and claimed his privilege as an attorney; that on that night, (the 24th), he met Driggs and Hard in the street, and they inquired if Burton had returned, saying it was rather hard to hold Driggs in charge any longer, and he told them he should enter a *nolle prosequi* the next morning, and did so.

The constable, who arrested Driggs, testified to the arrest, &c.

The plaintiff, after making proof that during 1868 there was a newspaper published at Burlington called the " Free Press," having a daily circulation of about 700 copies, and a weekly circulation of about 1,200 copies, offered to read therefrom an extract in the daily of date July 23d, 1868; to the admission of this the defendant objected, but the court admitted the same, and it was read to the jury; the defendant excepted thereto.

This extract was as follows :

" POLICE COURT.—Mr. William S. Driggs, a highly respectable looking citizen of Saginaw, Mich., was yesterday brought before justice Hollenbeck on a complaint and warrant, issued by State's attorney Englesby, on a charge of perjury in one of the numerous hearings of the celebrated arbitration between Alanson M. Clark, of St. Albans, and O. A. Burton, of this city. Mr. D. is charged with having falsely testified to the presence of Mr. O. A. Burton at the residence of Mr. J. H. Burton, in New York, on the 21st or 22d day of May, 1859. The case was postponed until this morning at 10 A. M., and the respondent meanwhile was set at liberty, on bail to the amount of $1,000, furnished by E. J. Phelps and E. R. Hard, Esqrs."

The foregoing was all the evidence which the plaintiff introduced in his opening, and upon it rested. The defendant thereupon claimed that the court should instruct the jury that the plaintiff had not made out the case, and should direct a verdict to be rendered for the defendant. The court declined so to do, to which the defendant excepted.

The defendant then put in the written statement of F. E. Woodbridge, agreed to be received as evidence. In this statement Mr. Woodbridge set forth the testimony of said Driggs before said

arbitrators, about being in New York on a certain day ; and also stated as follows :

" Mr. Burton presented a letter from A. M. Clark, written in New York, and dated May 22d, 1859, being, I think, the same day upon which Mr. Driggs swore that he met Burton in. New York, and directed to said Burton, at Burlington, Vermont. I have no recollection of ever having any conversation with Mr. Driggs in regard to his testimony, or of ever hearing him have any conversation with either of the other arbitrators, and I have no recollection of ever hearing any retraction of said testimony from any source."

The letter referred to in said Woodbridge's statement was then produced by the defendant, enclosed in an envelope directed by said Clark to " O. A. Burton, Esq., Burlington, Vt.," and bearing the post-mark, " New York, May 23d, 1859," and was offered in evidence. The plaintiff's counsel called for the reading of the letter, and it was read, and is as follows :

" NEW YORK, Monday, 22d May, '59.

" O. A. BURTON, ESQ. : *Dear Sir,*— I got here Friday evening, and have been kept along by Mr. Driggs until this evening, and now, instead of starting for Monongahela Valley, I start for Cleveland. I would like much,. if you are able, that you would come to New York at once, and from thence to Cleveland."

And then followed the reason why the writer wanted Mr. Burton to come to New York, and was signed " A. M. Clark."

Edward A. Sowles, called by the defendant, testified that he was counsel for said Clark on said arbitration, and that his particular business was to take minutes of testimony, points and remarks of counsel, and everything that transpired in course of the trial ; that he took minutes of the testimony of said Driggs, given August 11th, 1865, and they were correct (and he read from his minutes such testimony) ; that he never heard any retraction made of the testimony so given by Driggs, nor any intimation given that he had made any mistake, from Clark or his counsel ; that Driggs did not afterwards appear before the arbitrators.

This witness further testified that some time, and he should say three or four months before the prosecution of Driggs, Burton applied to him and asked him several questions as to his knowledge of any collusion between Clark and Driggs, and that so far as he made any reply to these questions his answers were evasive ; that he was counsel for Clark, and there was a good deal of ill-

feeling between Clark and Burton, and that he avoided conversation with Burton and turned him off; that on the 24th of July, 1868, he was applied to, at St. Albans, by Burton, in reference to his appearing and testifying in the prosecution against Driggs, and Burton then repeated his questions as to his knowledge of any collusion between Clark and Driggs; and that he told Burton that he did not wish to be a witness; that he was so situated with Clark that he did not wish to interfere, and certainly not without Clark's consent; and also told Burton (as he thought) that he knew nothing about the matter.

This witness was cross-examined, at much length, touching his interview with Burton, and the conversation between them, and on the point whether he knew, or ever gave Burton to understand that he knew, anything about any collusion or arrangement between Clark and Driggs in regard to Driggs's testimony before the arbitrators, and also in regard to what he had stated to Mr. Hard on these points. No verbatim minutes of the cross-examination were taken. The substance of the witness's statements, on cross-examination, was stated in the bill of exceptions. Also his minutes of Driggs's testimony, sworn to by the witness.

Oscar A. Burton, defendant, testified that he was present and heard Driggs's testimony before the arbitrators; that that testimony was not true; that Driggs never informed him that he was mistaken; that no intimation of the kind was made before the arbitrators, and he had never heard, from any source, that Driggs admitted he was mistaken, until the morning of the 24th of July, before the justice, and that he supposed and believed that Driggs swore wrong purposely; that he came from New York to Burlington on the morning of July 24th, in answer to a telegram from Mr. Englesby, and went first to Mr. Englesby's office, and then to the justice's office, and was informed that it was necessary to have his counsel in the arbitration present, with their minutes and such evidences of complicity between Clark and Driggs as he could get; that he went to St. Albans, but could not get back until 10 o'clock at night; that he called for Mr. Houghton to get his minutes, and found Houghton gone to New York; that Mr. Royce, another of his counsel in the arbitration, was also gone; that he applied to Mr. Sowles, and Sowles told him that the minutes he had taken were in Mr. Clark's possession, and he could not get them; that he requested Sowles to go to Burlington as a witness, as he understood that Sowles knew of some complicity between

Clark and Driggs, and that Sowles replied that he was attorney for Clark, and declined to go ; that he had, a considerable time before this, been informed by a certain person that said Sowles had knowledge of a complicity between Clark and Driggs in reference to the lawsuits, and that he thereupon applied to said Sowles and questioned him in respect to it, and that Sowles evaded, and that on his second visit to Sowles, on the 24th of July, he called Sowles's attention to the same matter ; that he had understood, from his counsel, that Clark was bail for Driggs, in Driggs's suit against him (Burton), and that Clark had been out to Saginaw to see Driggs, once or twice, on the subject of his testimony ; that Clark and Driggs were much together in 1859, met often, and went to McKeysport, Pa., together ; that on his return from St. Albans (July 24th), he saw Mr. Englesby that night or the next morning, and told him he could not get the testimony ; that Houghton and Royce were gone, and Sowles could not get his minutes, and declined to come on account of his relations to Clark ; that before this Mr. Hard had stated that Driggs had testified wrong, but it was a mistake, and he was sorry for it ; that he had no malice against Driggs, and so it was thought best to drop the prosecution.

This witness was cross-examined at length, in regard to all the points of his evidence, and touching his credibility, the substance of his statements was set out in the bill of exceptions, and also his reason for supposing that Driggs meant to swear falsely before the arbitrators.

On this evidence the defendant rested.

The plaintiff then recalled E. R. Hard, who testified to some facts additional to his testimony in the opening, and also to a conversation with Mr. Sowles, within ten days after said 24th of July, all which was set out in the bill of exceptions.

Wm. S. Driggs, plaintiff, testified that he resided at Saginaw, Mich., and had been a manufacturer of salt ; that he testified at the arbitration as has been stated ; that in the year 1859 he was in the habit of meeting O. A. Burton in New York ; that they boarded at the same hotel there for a month or two, commencing in January, 1859, and that he met Burton almost daily ; that Burton remained there longer than he, but he was frequently in New York, and met Burton there ; that they had business transactions together, and he met Burton several times at the house of his brother, J. H. Burton, in New York ; that this letter leads him to think he was wrong in his testimony, but he thought he was right

when he testified; that he came here to testify at Clark's request; that there was no collusion, agreement, or arrangement whatever between him and Clark in regard to his (Driggs) testimony, or that they were to testify for or assist each other, or anything of the kind; that he never received anything for his testimony in any way whatever, except that Clark paid his expenses in coming, in part only; * * * * that he left Burlington the same night that he testified; that after he had testified several gentlemen came over to Clark's room at the hotel, whom he had seen at the arbitration; that he knew none but Clark; Burton was not there, and could not say that either of the arbitrators was present; that he knew no one who was present at the arbitration but Clark; that it was there stated that his testimony could not be true because of the letter which Burton had produced; that he expressed surprise, saying that if the letter was true, as it seemed, he must be mistaken.

The witness also testified to the facts about the perjury suit in substance as Mr. Hard testified.

On cross-examination, he said, among other things, that he did not communicate to the arbitrators, nor to Burton, his mistake, and took no pains to correct it, not thinking it of much consequence; that he was in a great hurry to get away, and went that night; that his suit with Burton was then pending.

Here the plaintiff again rested.

The defendant, being recalled, testified that Clark, Driggs and himself never met at the house of J. H. Burton; and, on cross-examination, that he had a good deal of business with A. M. Clark up to 1859; that his brother J. H. was also concerned in that business; that Clark was frequently at his brother's house, and was his (O. A. Burton's) brother-in-law; that he (Burton) was often at his brother's house, but never met Driggs and Clark there together, though he had met Driggs there; that in 1859 Clark did not meet his brother and himself from the first day of May till fall; since the spring of 1859 he did not meet Clark at his brother's house till July, 1859; he (Clark) was in Ohio, buying wool that summer.

The bill of exceptions contained the whole evidence, the substance of which is above stated.

The defendant's counsel made the following points, and asked

for rulings and instructions to the jury in accordance therewith, viz:

Upon the whole evidence the plaintiff is not entitled to recover.

1st. The prosecution before justice Hollenbeck, having terminated in a *nolle prosequi*, in the manner stated, was not such a determination of the case as to warrant a recovery in this suit.

2d. Upon the undisputed facts there was probable cause for the prosecution, viz: that Driggs did swear falsely upon a point material, and that known to Burton to be false, and without any intimation to Burton, from any source, that Driggs claimed to have given his testimony under a mistake; that this is a question of law for the court to determine.

3d. There is no evidence in the case that Burton believed that Driggs testified under a mistake; but the legal presumption is that Burton entertained and acted upon the belief which the facts known to him justified him in holding.

4th. There is no evidence that Driggs did testify under a mistake, except his present statement as a witness.

5th. If Burton stated the facts truly to Englesby, (state's attorney,) and the state's attorney thereupon acted upon his own judgment as to the propriety of instituting the prosecution, the plaintiff cannot recover.

6th. The evidence upon this point all tends to prove the facts of this last proposition.

7th. The burden is upon the plaintiff to prove: 1st, want of probable cause for the institution of the prosecution. 2d, malice on the part of Burton in instituting it.

8th. Proof of malice does not tend to prove want of probable cause.

9th. If there was probable cause, the question of malice becomes immaterial.

10th. It is not evidence either of malice or want of probable cause that Burton, being on the morning of July 24th, 1868, for the first time, informed that Driggs claimed that he had testified falsely, but under a mistake, did not at once yield to that claim, not believing it, but requested further time to ascertain whether Drigg's claim was true, by the procuring of Sowles or other witnesses to prove the contrary, or that Driggs had testified for Clark by a collusion or conspiracy between them, believing that to be the fact, or that it was probably true.

11th. If Burton had been informed that Sowles had knowledge of the fact of such collusion or conspiracy, or reasonable cause to believe that Sowles possessed such knowledge, he was justified

in endeavoring to prove that fact by Sowles and delaying the case for that purpose.

12th. But such endeavor, on the 24th, has no tendency to prove want of probable cause in instituting the prosecution.

The court declined to charge as requested, (except so far as is contained in the charge, as hereinafter stated,) but did charge the jury, in substance, as follows:

That the disposition of the prosecution against Mr. Driggs, by the entry of a *nolle prosequi*, was such a termination, under the circumstances of the case, as would allow of the plaintiff's recovery in this action, provided his case was made out, in other respects, according to the instructions of the court.

That it being conceded that a prosecution was instituted against the plaintiff for perjury, on which he was arrested, and subsequently discharged by *nol. pros.*, and that it was set on foot by the defendant, the questions to be considered and determined by the jury were whether the defendant, in so doing, acted without probable cause and maliciously, and that it was for the plaintiff to establish—the burden of proof being on him—to the satisfaction of the jury, that the defendant did act without probable cause and with malice. If he failed to make out either of these points he would not be entitled to recover.

That probable cause meant such a state of facts and circumstances as would induce men of ordinary prudence and conscience to believe the charge to be true ; whether such probable cause, as thus defined, existed in the present case, was for the jury to determine, upon a careful review of all the evidence in the case. If the plaintiff failed to satisfy the jury that the defendant acted without such probable cause, that he had no such reason to believe, and did not believe, the plaintiff to be guilty, then the case is at an end, no matter what the defendant's motives might have been. Even if, from malicious or bad motives, he instituted a prosecution for which he had probable cause, the plaintiff would not be entitled to recover, nor would that prove a want of probable cause. If the jury are satisfied that no such probable cause existed, they will then consider the question whether the defendant is shown to have acted maliciously.

If the prosecution was instituted without probable cause, malice may then be inferred, *prima facie*. The inference would be, if nothing further appeared, that the defendant's conduct was malicious and in bad faith, and it would then be incumbent on him to show that he acted in good faith and without malice. But it does not necessarily follow that, because the prosecution was started

without probable cause, it was done maliciously. It may still have been in good faith and without malice. Both must have concurred; and the question of malice is for the jury to determine upon the evidence, under the foregoing instructions: whether the defendant had probable cause to believe in the charge, and whether he acted maliciously, are questions for the jury.

The foregoing rules were suitably and sufficiently explained and applied to the evidence in the case upon a review of the facts and circumstances of the case.

On the question of probable cause the jury were told, among other things, that it was conceded that the fact testified to by Driggs, before the arbitrators, was untrue. Of course the defendant must have known it to be untrue. Had he then reason to believe (and did he believe) that the plaintiff knew, when he testified, that the statement was false? Did the plaintiff so testify knowingly, or was it a mistake? And if it was a mistake, were the circumstances such that a reasonable man ought to have believed it a mistake? It has been said, in behalf of the plaintiff, that a mere matter of time is one in which mistakes are natural and likely to occur. It must be remembered, however, that in this case the time was the only material thing that Driggs was called upon to testify to. Perjury may be committed in respect to that as well as in anything else. And where the time is the material point, witnesses ought to be cautious; and to it their attention is generally particularly called. It should be further considered that the defendant was a party in the case against whom the evidence had been given. Would he be as likely as an indifferent person to put a charitable construction upon the testimony, or would he be more likely to infer that the misstatement was intentional. The natural operation of the human mind is to be considered in determining whether the defendant, under the circumstances, had reasonable ground for believing, and did believe, the misstatement was made knowingly, and acted in good faith. What would have been, perhaps, unreasonable for others, might still be reasonable for him.

If the defendant, knowing the testimony was false, believed it was knowingly so, that would be probable cause.

On this question, also, the evidence as to the testimony of the plaintiff before the arbitrators having been generally conceded to be untrue, and as to his claim that he was mistaken as to the time, might be considered.

If the fact came to Burton's knowledge ( and there is no direct evidence that it did) that Driggs stated that he was mistaken, shortly after his testimony was given, that is to be considered as

tending to destroy his honest belief that it was perjury on the part of Driggs.

If, however, it was not known to the defendant that it was claimed by the plaintiff to have been given under a mistake, it would not be evidence to affect him on the question of probable cause or malice. On the question of malice, the jury were told, among other things, that if the defendant had reason to believe that Sowles had knowledge of any fact material to the prosecution as tending to sustain it, he had a right to attempt to procure the evidence and to obtain time for doing it, and his so doing would not be proof against him provided he acted in good faith.

But if in the matter of Sowles's evidence he acted in bad faith, not believing that Sowles knew anything material to the prosecution, that would be evidence that might be considered on the question of malice, and as tending to show bad faith from the beginning.

That Mr. Hard's evidence of what Sowles told him was not evidence to prove the facts Sowles so related, but only to impeach Sowles so far as his statements out of court conflicted, if at all, with those in his evidence. In regard to the defendant's application to Englesby, the state's attorney, if he had probable cause or acted without malice in making the statement, he would not be liable. But if he acted in bad faith, did not believe nor have reason to believe the plaintiff guilty, that Mr. Englesby proceeded in good faith, would not exonerate the defendant.

On other points of the case the court charged as the case required, and in a manner not excepted to.

The defendant excepted to the refusal to rule and charge as requested, and to the charge of the court upon the points made, as above stated, and especially to the charge of the court as to the inference of malice from want of probable cause, in submitting to the jury the effect upon the case which would result from the defendant having or not having knowledge that the plaintiff claimed that his testimony was given under a mistake, and in leaving to the jury, in the manner set forth in the charge, the question of probable cause for instituting the prosecution.

After the conclusion of the charge, the counsel for the defendant called the attention of the court to the statement to the jury that time was the only material point in the testimony of Driggs before the arbitrators. The court declined to vary the charge on that point because the case had been placed on that ground all the way through on both sides, and no evidence given as to the truth or falsehood of any other statement in that testimony.

To this, also, the defendant excepted.

18

Extract from justice Hollenbeck's record :

July 23, 1868, continued to July 25, 1868, at which time the state's attorney entered a *nolle prosequi.*

*L. B. Englesby, Daniel Roberts* and *H. S. Royce,* for the defendant.

The entering of the *nolle prosequi,* under the circumstances, was not such a determination of that case as to warrant a recovery in this suit.    There was no entry on the justice's record of a discharge of Driggs.    There was no hearing, no presence of parties, no judicial action in the entering of the *nolle prosequi.*    It was done out of court, by a notice given by the State's attorney, without act or direction, on the part of Burton, but by consent and request of Driggs.    *Bacon* v. *Towne,* 4 Cush., 217 ; *Parker* v. *Farley,* 10 Cush., 279 ;   *Brown* v. *Lakeman,* 12 Cush., 482 ; 2 Greenl. Ev., §452.    " Any termination by consent will prevent an action."    1 Am. Lead. Cas., 223.    " The termination must be such as to furnish *prima facie* evidence that the   action   was without foundation."    *Wilkinson* v. *Howel,* 1 Mood. & Malk., 495, (22 E. C. L. 968.)    It is averred in the declaration that " a *nolle prosequi* was entered in said cause, and the plaintiff was then and there discharged out of custody, fully *acquitted* and discharged of the said supposed offence."    The record does not prove this averment, and it is disproved by the other testimony.    This acquittal and discharge of the offence is a material averment, and the failure to prove it as laid is fatal, as well on the score of variance as of essential substance.    1 Hill. Torts, 499 ; citing *McCormick* v. *Sissons,* 7 Cowan, 715; 1 Am. Lead. Cas., 221–2–3 ; *Morgan* v. *Hughes,* 2 T. R., 231 ;   *Chapman* v. *Woods,* 6 Blackf., 504 ; *Law* v. *Franks,* Cheves, 9 ; *Hester* v. *Hapgood,* 3 Hill, 195.    The newspaper publication should not have been read.    The testimony of Hard in brackets should  not have been received.    The charge upon this evidence was erroneous.    Upon the plaintiff's opening evidence, the court should have directed a verdict for the defendant..    1. The case as thus made was, that Driggs had sworn positively and untruly upon a point material ; that he swore with great positiveness ; that he took no pains to correct his testimony ; that

no information or intimation had ever come to the knowledge of Burton, until after the prosecution had been commenced, that Driggs even claimed that the falsity of his testimony was by mistake ; and Driggs, then in court, had not even then ventured to testify that his testimony before the arbitrators was not willfully false. The case was one of perjury, *prima facie, State* v. *Chamberlin*, 30 Vt., 559. 2. That the defendant proceded further in the trial cannot be treated as a waiver of his exception. He *did* except, and the court has allowed the exception, and the decision was erroneous.

Our argument applies with controlling force, when considered in connection with the rather peculiar practice in this State, which allows the plaintiff to rest upon a *prima facie* case, and to fortify that, in the close, by additional evidence. *Kent* v. *Lincoln*, 32 Vt., 598 ; *French* v. *Smith et al.*, 4 Vt., 363 ; *Heslop* v. *Chapman*, 22 Law and Eq., 296. The glaring error of the charge was leaving the question of probable cause as a fact to be found by the jury. This is contrary to every known authority upon the subject. *Johnston* v. *Sutton*, 1 T. R., 545 ; *French* v. *Smith*, 4 Vt., 363 ; *Stone* v. *Crocker*, 24 Pick., 81 ; *Bacon* v. *Town*, 4 Cush., 217 ; *Parker* v. *Farly*, 10 Cush., 281 ; *Panton* v. *Williams* in Ex. Ch., 42, E. C. L., 622 ; *Pangborn* v. *Bull*, 1 Wend., 345 ; *Bulkley* v. *Kettelas*, 2 Selden, 384 ; *Taylor* v. *Godfrey*, 36 Maine, 525 ; *Kidder* v. *Parkhurst*, 3 Allen, 393 ; *Bessan* v. *Southard*, 10 N. Y., 236. As to the inference of malice from want of probable cause, see *Closson* v. *Staples*, 42 Vt., 209 ; 1 Hill. Torts, 447 ; *Carpenter* v. *Shelden*, 5 Sandf., 77 ; *Mitchell* v. *Jenkins*, 27 E. C. L., 131 ; *Barron* v. *Mason*, 31 Vt., 189–197 ; *Heslop* v. *Chapman*, 22 Law. & Eq., 296 ; *Turner* v. *Ambler*, 11 Ad. & El., N. S., 252. (59 E. C. L., 252) ; *Broad* v. *Ham*, 35 E. C. L., 286 ; *Buckley* v. *Smith*, 2 Duer, 261 ; *State* v. *Chamberlin*, 30 Vt., 559 ; *Musgrove* v. *Newell*, 1 Mess. & Well., 589. There was no question of *bona fides* fairly in the case for the jury to consider. *Foshay* v. *Ferguson*, 2 Denio, 617 ; 1 Am. Lead. Cases, 213 ; *Blackford* v. *Dodd*, 22 E. C. L., 53 ; *Kidder* v. *Parkhurst*, 3 Allen, 393. The tenth and eleventh requests should have been answered in terms, or their equivalent. 31 Vt., 203 ;

*Wilmarth* v. *Mountford*, 4 Wash. C. C. R., 79; 1 Am. Lead. Cas., 205. This court, having all the evidence, can review it and say whether there was want of probable cause proved. *Baldwin* v. *Weed*, 17 Wend., 224. 1. It can adjudge that there was probable cause, and that there was no evidence tending to show Burton's disbelief. So the court below should have ruled. 2. It can adjudge that there was probable cause, *prima facie*, that is, with reference to that " common standard of human judgment and conduct," spoken of in *Barron* v. *Mason*, 31 Vt., 198–9, but that, there being some evidence tending to show Burton's disbelief of the charge, that question should have been left to the jury upon a proper charge. See charge in *Broad* v. *Ham*, 35 E. C. L., 286.

*E. J. Phelps* and *E. R. Hard*, for plaintiff.

There was no error in the admission of the evidence objected to by the defendant, relative to what occurred at Clark's room between him and the plaintiff. *Nash* v. *Doyle*, 40 Vt., 496. The evidence, showing the publication of the newspaper notice of the prosecution against the plaintiff, was properly received. The court was right in declining to direct a verdict for the defendant at the close of the plaintiff's case. The discharge of the plaintiff is *prima facie* evidence of want of probable cause. 1 Am. Lead-Cas. 215, 217 ; *Nicholson* v. *Coghill*, 4 B. & C., 21 ; *Smith* v. *Ege*, 52 Penn., 419 ; 24 Pick., 81 ; 4 Cush., 236. That the prosecution against the plaintiff terminated in his discharge upon what was called a " *nol. pros.*," is not, under the circumstances of the case, a bar to this action. 2 Selwyn's Nisi Prius, 1054, and cases there referred to. The right to maintain an action for a malicious prosecution does not depend upon the form of the proceeding complained of, the character or jurisdiction of the court in which it is instituted, the sufficiency or insufficiency of the proceeding, the manner of trial, or whether any trial at all was had, nor on the manner in which the acquittal or discharge of the plaintiff was obtained. All that the plaintiff in such actions is required to show in respect to the character and termination of the proceeding of which he complains is, that, in form at least, it was a judicial proceeding, and that previous to the commencement of his

suit the former proceeding was legally at *an end*, so that it could not be revived nor the subject matter of it be further prosecuted, except by a new proceeding. 1 Am. Lead. Cas., (4 ed.) 222 ; 2 Greenl. Ev., § 449 ; Selwyn N. P., 1057 ; 2 Stark. Ev., 907. It is not necessary that the plaintiff, in an action for a malicious prosecution, should have been acquitted in such a manner as to bar a second prosecution for the same alleged offence, nor that any judicial decision should have been had upon the merits. *Clark* v. *Cleveland*, 6 Hill., 344. An acquittal on the ground of variance is sufficient. *Wicks* v. *Fentham*, 4 T. R., 247. So for a defect in the indictment. *Chambers* v. *Robinson*, 1 Strange, 691 ; *Pippit* v. *Heam*, 5 B. & Ald., 634. So a discharge'on hearing by the magistrate having no jurisdiction to *try*, but only to bind over or discharge. *Sayles* v. *Briggs*, 4 Met., 421 ; *Goodrich* v. *Warner*, 21 Conn., 432 ; *Smith* v. *Ege*, 52 Penn., 419 ; *Secor* v. *Babcock*, 2 Johns, 203. So by a court having no jurisdiction at all. *Stone* v. *Stevens*, 12 Conn., 219 ; *Morris* v. *Scott*, 21 Wend., 281 ; *Hays* v. *Younglove*, 2 B. Mon., 545. So a discharge by a magistrate without hearing, by the consent of the prosecutor, or with his acquiescence ; as in the present case. *Burkett* v. *Lanata*, 15 La., 337. So upon a *nolle prosequi*. *Chapman* v. *Woods*, 6 Blackf., 504 ; 1 Am. Lead. Cas., 222 ; *Brown* v. *Randall*, 36 Conn., 56. So a recovery was had by the plaintiff in an action for a malicious prosecution, when the defendant had taken out a warrant to search the plaintiff's trunk for stolen goods, and to arrest the plaintiff if the goods were found, although no arrest was made, the goods not being found. *Riley* v. *Gourley*, 9 Conn., 154. A discharge of the accused upon the return of a bill " not found," by the grand jury, is sufficient. . *Payn* v. *Porter*, Cro. Jac., 490 ; *Thomas* v. *De Graffernerd*, 2 Nott. & McC., 143. Or, in a civil action, a discharge on non-suit without trial, or upon a *nol. pros.*, or a discontinuance or final stay of proceedings. *Martin* v. *Lincoln*, cited in 1 Esp. N. P., 120 ; *Kirk* v. *French*, 1 Esp., 80 ; *Sinclear* v. *Eldred*, 4 Taunt., 7. The dictum contained in Greenl. Ev., (Vol. 2, § 452), that " it must appear that the plaintiff was *acquitted* of the charge ; it is not enough that the indictment was ended by the entry of a *nolle prosequi*," is not

sustained by the authorities cited in its support. These are *Fisher* v. *Bristow*, 1 Doug., 215 ; *Smith* v. *Shackleford*, 1 Nott. & McC., 36 ; *Goddard* v. *Smith*, 6 Mod., 261, and *Morgan* v. *Hughes*, 2 T. R., 225.

The defendant was not entitled to a compliance with his *second* request to charge, and the charge in respect to the point involved in that request was proper and all that the defendant was entitled to. It is not denied that the question of probable cause, when it depends wholly on the evidence of records or written documents, and also where there is no conflict of evidence, nor ground of dispute as to the facts proved, or as to motive, is a question of law to be determined exclusively by the court. But where the evidence relating to this question rests in parol testimony, and especially if there is evidence on both sides, or where the motive or belief of the prosecutor, or any other fact material to the question, is to be inferred, as is generally the case, from facts admitted or proved, the question of probable cause then becomes a mixed question of law and fact, and is exclusively for the jury, under specific instructions from the court relative to what is essential to establish it. *French* v. *Smith*, 4 Vt., 363 ; 2 Gen'l. Ev., § 454 ; *Barrows* v. *Mason*, 31 Vt., 189 ; *Crabtree* v. *Horton*, 4 Munf., 59 ; *Buckley* v. *Katelas*, 6 N. Y., 384 ; 1 Am. Lead. Cas., 214, 216, 218, 219 ; *Goodrich* v. *Warner*, 21 Conn., 440, *per cur.* ; *Stone* v. *Stevens*, 12 Conn., 219 ; *Smith* v. *Ege*, 52 Penn., 419 ; *Sessions* v. *Newport*, 23 Vt., 9 ; *Hill* v. *New Haven*, 37 Vt., 510 ; 2 Phillips' Ev., p. 256, note ; *Isaacs* v. *Bond*, 2 Starkie, 167 ; *Brooks* v. *Warlock*, id., 389 ; *Ranenga* v. *Mackintosh*, 2 Bar. & Cress., 693 ; *Nicholson* v. *Coghill*, 4 id., 21. If the facts mentioned in that request, *per se*, amount to probable cause, the request should have been granted ; but if to constitute probable cause anything further was necessary, by way of proof or inference, it then became a question for the jury.

The eighth request was substantially complied with, at least so far as it properly could be. The fact of malice, though alone insufficient to prove want of probable cause, is a fact proper to be considered in determining whether there was or was not probable cause, and has a tendency to show there was not. 5 Phil. Ev.,

(C. & H., note,) 256 ; *Turner* v. *Turner*, 5 Eng. Com. L., 444.

The jury were properly told that "If the prosecution was instituted without probable cause, malice may then be inferred, *prima facie.*" *Baron* v. *Mason, supra*; 5 Phil. Ev., 257 ; *Stone* v. *Stevens, supra*; 2 Stark. Ev., 912 ; 1 Hil. on Torts, 514, 515 ; 2 Gen. Ev., 453 ; 1 Am. Lead. Cas., 212; *Burley* v. *Bethune*, 1 Eng. C. L., 198, per Gibbs, C. J.; *Wheeler* v. *Nesbitt*, 24 How., 552, per Clifford, J.

(All the points of the defendant's requests were presented at length in the briefs for both sides.)

The opinion of the court was delivered by

WHEELER, J. From the oral evidence received without objection and not contradicted, it appears that the plaintiff was in fact discharged from custody, and that the proceedings against him before Justice Hollenbeck came in fact to an end. There was no formal discharge of him by the justice, but the proceedings that were had in effect discharged him. The entry made by the justice upon his files was merely *nolle prosequi* by the State's attorney ; but that entry was a mere memorandum, made by the justice, by which to write out the formal record of the proceedings at large. The full record would show the discharge of the plaintiff and the end of the proceedings. Neither the form of the memorandum nor the want of a full record ought to, or can, vary the effect of what was done. There are cases that hold that the entry of a *nolle prosequi* by a prosecuting attorney is not a sufficient termination of an indictment to warrant a recovery for a malicious prosecution of the indictment, and that nothing short of an acquittal upon the merits would be sufficient for that purpose. Where the entry is the mere act of the prosecuting attorney and no action of the court is had upon it, the entry would not be an end of the proceedings, and for that reason would not warrant any action which could not be had before the proceedings were at an end. Upon the proceedings against the plaintiff, Justice Hollenbeck could neither acquit nor convict; but could only bind over or discharge. He did, in effect, discharge the plaintiff ; and

that was a complete termination of that prosecution, and as favorable a one as could be had for the plaintiff. Under these circumstances, to hold that the prosecution was at an end far enough to warrant an action for maliciously prosecuting it, will not really conflict with the cases alluded to. 1 Am. Lead. Cas., 222. Upon principle, it seems that the termination upon the *nolle prosequi* of the State's attorney, under these circumstances, was sufficient, and no error is found in this respect.

It is urged in behalf of the defendant that the prosecution came to an end so by the consent of the plaintiff as to defeat this action. But, although the plaintiff and his counsel suggested to the State's attorney that it was rather hard to hold the plaintiff in charge any longer, and the State's attorney thereupon told them he should enter a *nolle prosequi* the next morning, — and did so — still it does not appear that the suggestion had any influence with either the defendant or the State's attorney with reference to the extent to which the prosecution should be pushed, nor that the defendant did not proceed with the prosecution regardless of any wishes of the plaintiff so far as the defendant otherwise saw fit. The prosecution does not appear to have been ended because the plaintiff consented to a termination of it, but because the defendant did not procure the necessary witnesses, and the State's attorney chose to stop it. No such consent appears here as would be necessary to affect the plaintiff's right of recovery.

The publication in the Free Press gave notoriety to the fact of the prosecution of the plaintiff. It naturally followed from the act of prosecution, and if the defendant set the prosecution on foot it was but a natural consequence of his own act. It was the same in nature that evidence of how many persons were present and knew of the prosecution, or that rumors of the fact of the prosecution went abroad from mouth to mouth, would have been. Evidence of this latter description was held to be admissible in an action of slander in *Nott* v. *Stoddard*, 38 Vt. 25. No error appears in the decision in this respect.

The testimony as to what the plaintiff said when informed by Clark of the production of the letter that showed his testimony before the arbitrators was untrue, was quite important in the case

if the defendant knew of that transaction. The right of the plaintiff to recover depended largely upon what the defendant did know in respect to all matters connected with the testimony of the plaintiff, and upon what the defendant believed from what he knew. This evidence was admissible and proper to be considered for the purpose for which the court permitted it to be considered, if there was any evidence tending to show that the defendant knew of the facts disclosed by it and the jury found such knowledge from the evidence; and if there was no such evidence it was inadmissible; and if there was such evidence and it was insufficient to prove the knowledge of the defendant, it was not proper to be considered. That there was no direct evidence of such knowledge is conceded here and was held by the court below. *Nash* v. *Doyle*, 40 Vt., 96, has been referred to as an authority to show that there was some circumstantial evidence of such knowledge to be submitted to the jury. That was a prosecution for bastardy. The prosecutrix had been induced to make oath to an affidavit that a person other than the defendant was father of the child by unfair means. An important question was whether there was any evidence tending to show that the defendant knew what means were used or not. The affidavit was procured by the defendant's brother, who was his bail, and the defendant's attorney; and the defendant made use of the fact that she had made such an affidavit on the trial. It was held that all these circumstances together were sufficient to warrant a finding of knowledge of the transaction on the part of the defendant.

Here there is no evidence that this defendant's attorneys, or any of them, knew of the transaction between the plaintiff and Clark, nor that any relative or friend or agent of the defendant's knew of it. The defendant may have heard of it, but if he did, no one testified to any fact that would show that he had more than a mere conjecture. Such a conjecture is insufficient from which to find a fact to found a right of recovery upon. The admission of this evidence, for the purpose and use made of it, seems to be error.

In the charge to the jury the court defined probable cause accurately and satisfactorily. No just criticism has been, or could

be, made of the definition. After giving this definition, the court further charged that, whether such probable cause as thus defined existed in the present case, was for the jury to determine, upon a careful review of all the evidence in the case. This statement of the duty and responsibility of the jury in this respect was not afterwards varied in the charge, but was re-stated several times, with many just considerations as to the application of it, if it was correct. Afterwards, in the order of the charge as stated in the bill of exceptions, the jury were instructed that if the defendant, knowing the testimony was false, believed it was knowingly so, that would be probable cause. This proposition, by itself, is a statement of what in law would amount to probable cause. If the whole charge had been made to conform to this proposition, and the right of the plaintiff to recover had been made to depend upon whether the facts contained in the proposition existed or not, there would have been no error in law as the law is claimed to be by the defendant's counsel. But this part of the charge is to be construed with what preceded it upon the same subject, and in connection with that, the jury must have understood that they were to determine the defendant's belief with reference to the definition of probable cause before stated to them, and that they were to decide, not only upon the existence of the facts, but whether upon the facts they should find to have existed, there was probable cause as defined by the court or not.

What constitutes probable cause in these actions is a question of law for the court. All inferences to be drawn from facts, undisputed or found by the jury to exist, are upon this subject inferences of law and not of fact, and are to be drawn by the court and not by the jury. This rule is peculiar to this class of actions, and has been long established, and is well founded upon sound reasons and good authority. Where the inference to be drawn from existing facts is one of fact, as it usually is in questions of the sufficiency of highways, ordinary care, and the like, it is always to be drawn by the jury. The cases cited upon this point on the part of the plaintiff are apt illustrations of this rule, but they have no application except to cases of that kind. The rule upon this subject as to the existence of probable cause was

adopted as early as actions founded upon the want of probable cause were brought into use, and has never been relaxed. In the early history of these actions it was customary to set forth the facts in the defendant's plea, and upon demurrer the court would determine whether there was probable cause or not, upon the facts set forth. TINDAL, Ch. J., *Panton* v. *Williams*, 2 Ad. & El., N. S., 192. Where some or all the facts were in dispute the existence of the facts, and that only, was submitted to the jury. The early authorities seem to be uniform to this effect. There are some cases—and among them are *Taylor* v. *Will* s, 2 B. & Ad., 845, and *Broad* v. *Ham*, 5 Bing., 722—which a might seem to countenance the doctrine that the whole eviden nd all inferences to be drawn from it were to be submitted to jury. As to these cases, Ch. J. TINDAL, in *Panton* v. *Williams*, 2 Ad. & El., N. S., 169, in reviewing one of the decisions of Ch. J. DENMAN, said: There have been some cases in the later books which appear at first sight to have somewhat relaxed the application of that rule by seeming to leave more than the mere question of the facts proved to the jury: but upon further examination it will be found that although there has been an apparent, there has been no real departure from the rule. And he proceeded to apply the rule to the decision he was reviewing, and reversed it. In *Turner* v. *Ambler*, 10 Ad. & El., N. S., 252, LORD DENMAN, Ch. J., said, in granting the rule: A rule *nisi* must be granted; but it is not to be presumed that we mean to question the doctrine of *Panton* v. *Williams*. The rule was afterwards stated and enforced in England, in *Heslop* v. *Chapman*, 22 El. & E., 296. It has also been strictly adhered to in New York. *Pangborn* v. *Bull*, 1 Wend., 345; *Baldwin* v. *Weed*, 17 Wend., 224; *Bulkley* v. *Ketelas*, 2 Seld., 384. And also in Massachusetts. *Kidder* v. *Parkhurst*, 3 Allen, 393.

In practice a true application of the rule seems to require that if none of the facts are in dispute, the question of probable cause arising upon them should be decided by the court as a question of law, without the intervention of the jury at all. That if some of the facts are undisputed, and others are in controversy, and the question of probable cause cannot be determined upon the un-

disputed facts without determining the existence of those in dispute, then the case should be presented to the jury by stating which of the disputed facts are to be passed upon and how, so that by determining the mere existence or non-existence of them, the question of probable cause or the want of it will be determined, according to the view of them in law taken by the court.

This charge, in the view taken of it, did not conform to or apply this rule, and appears to be erroneous. Upon the rule adopted by the court below, the charge was very careful, and manifestly fair and impartial, but these qualities cannot cure error, although they would make it much more wholesome.

Exception was taken to the charge upon the effect of want of probable cause upon the question of malice. Want of probable cause and malice are each essential to the cause of action, and each must be proved, and proof of neither will, as a matter of law, supply proof of the other. The same facts that would make out the want of probable cause in many, and probably in most, cases would tend to show malice. In cases where the facts would have that tendency, the evidence should be submitted upon the question of malice independently, and that question should not be left to depend upon or follow the finding upon the other. Some of the members of this court think this charge upon this subject was in accordance with these views; other members think it was not. Since the judgment must be reversed upon other grounds, further suggestions upon this point are needless.

Counsel for the defendant insist that this court, having all the evidence before it, can review it and determine the question of the want of probable cause here. The evidence now before the court shows that the plaintiff swore falsely, and that the defendant knew it. These facts are undisputed. If false swearing was perjury, there would be probable cause, beyond question, for the defendant would know that the plaintiff was guilty. But a great deal of testimony is given that is false, and yet is not perjury, and the circumstances are such that those knowing them know that it is not. And, upon the same circumstances, some persons, owing to their own peculiar relations to them, or to their own peculiarities of thought and judgment, would believe the testimony to be willfully

Driggs v. Burton.

false, while others, differently situated, or with different views, would think it mistakenly so. Here the defendant, from his stand-point and with his views, may have believed that the testimony was willfully false. If he did, then upon the case as it is now presented, that belief, in connection with the facts that the testimony was false, and he knew it to be so, would amount to probable cause. But if he did not so believe in fact, and the plaintiff was not in fact guilty, then there would be a want of probable cause. This fact of the actual belief of the defendant is an important one, and upon the evidence, cannot be determined as a matter of law either one way or the other. Therefore, there must be a trial by jury to determine the existence of this fact, as the case now stands, and perhaps others in connection with it, or not, according to the case as it may, upon another trial, be presented. As the case stands, it must be remanded for a new trial.

When the plaintiff rested his case, the defendant desired, and had the judgment of the court upon it. That judgment was subject to exception by the party against whom it was made, while the case stood as it then did. If against the plaintiff, he could, with leave of the court, put in more evidence, and thus vary the case. In that event, he would not be entitled to keep an exception to the decision upon the case as it was before it was varied. It was against the defendant to which he excepted. After that, he was permitted to put in evidence that varied the case, and had a decision of the court upon the case as varied, and exceptions to that decision. He could not vary the case upon which judgment was passed, and still have exception to the judgment. He must stand as to this as the plaintiff would have stood, under the like circumstances.

Judgment reversed, and cause remanded.