PANGBURN vs. BULL.

ERROR from the Albany common pleas. The action in the common pleas was for a malicious prosecution, brought by Bull against Pangburn. The plaintiff declared that the defendant, on the *thirtieth* day of March, 1826, not having any reasonable or probable cause of action whatsoever against the plaintiff, which he, the defendant, well knew, procured a summons from a justice, under the *fifty dollar act*, against the plaintiff, returnable on the 8th day of April then next, to answer the defendant in a plea of trespass on the case; that the same was delivered to a constable, who, on the *fifteenth* day of March, in the year aforesaid, served it on the plaintiff; that the parties appeared; that Pangburn declared on a pretended claim for money, demanding $10, to which Bull pleaded the general issue; that the cause was adjourned, on the application of Pangburn, until the 18th day of April, when the parties appeared and Pangburn discontinued his suit; that on the same day, Pangburn procured another summons from the same justice, in his favor, against Bull, returnable on the 28th day of April, which was served; that on the day of the return the parties appeared, issue was joined, a trial had, and judgment rendered against Pangburn for the costs of the suit; by means of which premises the plaintiff hath been greatly damnified, &c. To this declaration the defendant pleaded *non cul.* In December, 1826, the cause was tried. The facts

*An arrest and holding to bail are not indispensably necessary to the maintenance of an action for a malicious prosecution. It is, however, not enough to state in a declaration that a suit was commenced maliciously and without cause, but the particular grievance must be alleged, the gist of these sort of actions arising from some evil practice or malice in him who sues or prosecutes. The question of probable cause is a mixed question of law and fact. When the facts are ascertained, it is a question of law, and it is the duty of a court to pronounce the law arising upon* the facts, and not to leave it to the discretion of a jury: still, when the question of probable cause is submitted to a jury, who find for the plaintiff, and this court, on a review of the case, are satisfied that there evidently was a want of probable cause, and that the jury have not erred in point of law, the judgment will not be reversed for the error of the court in submitting the question to the jury. If, however, the testimony leaves the question of probable cause doubtful, then the error of the court would be good ground for a reversal, as it is the exclusive province of a jury to draw inferences from conflicting testimony. When a party, with full knowledge of all the circumstances, pays a sum of money, and afterwards maliciously commences a prosecution to recover back part on the ground of an over-payment, although the fact may be that the party received more than he was entitled to, such fact will not support the defence of probable cause in an action for a malicious prosecution. Where an *impossible* date is alleged in a declaration, it will be rejected, provided enough be left to give sufficient certainty to the pleading.*

alleged in the declaration, were shewn by the production of a written stipulation signed by the parties, and from which it further appeared, that on the adjournment on the 8th of April, Bull took out subpœnas for witnesses, but Pangburn did not; nor did he produce any witnesses on the day that he discontinued the first suit. The plaintiff further proved, that he told the defendant that all the dealings he ever had with him, was, that he, the plaintiff, had boarded the defendant and received twelve shillings for it, which the defendant did not deny; that the only evidence offered by Pangburn, when the cause was tried before the justice, was a declaration made by Bull, that Pangburn had boarded with him, and had paid him $1,50 for the same. The place of trial appointed by the justice was 14 miles from Albany, where Bull resided. The plaintiff further proved a declaration of Pangburn, that he would bring Bull four times to Guilderland, and he would get no advantage of him; that Bull had taken too much for his board, that he had overcharged him, and charged him more than he did others, or more than he agreed to. On being told that he could not make an action lie, as he had settled with Bull and taken a receipt, he replied, that he would *bring him out four times.* The witness who was called by Pangburn, on the trial before the justice, testified in the common pleas, that he was the constable who served the summonses, which were regularly served six days before their return; that previous to his being sworn on the trial before the justice, he had not been asked by Pangburn what he could testify to; that he was desired, on that trial, to state what Bull told him when he served the first summons; that he testified that Bull told him that Pangburn had boarded with him in the February term, and that he had received for the same, of Pangburn, twelve shillings, for which he had taken a receipt, and that was the only dealing he ever had with Pangburn; that Pangburn, at the time he paid him, complained of being overcharged, and threatened to bring him (Bull) up to Guilderland; that Pangburn did not pay him until after he had been written to, to come and pay. The plaintiff proved that the defendant boarded with him a part of two weeks, the witness stating that he was there more than one day each

week, and as long as between three and four days; that wit-
ness, who boarded with plaintiff at the same time, paid three
shillings per day for his board. The plaintiff rested.

The defendant moved that the plaintiff be nonsuited, on
the following grounds: 1. That in the suits before the justice,
complained of as malicious, the plaintiff in this cause had
neither been arrested, nor held to bail; 2. That a want of
probable cause for instituting the suits had not been shewn,
nor had malice been proved; 3. That there was a variance
between the proof and the declaration, as to the time of ser-
vice of the summons in the first suit before the justice. The
court refused to nonsuit the plaintiff, and decided that the
several matters offered in evidence by the plaintiff, ought to
be submitted to the jury, and that it was their province to
determine whether the absence of probable cause and malice
had been sufficiently proved. To which opinion the defend-
ant excepted, and then introduced a witness on his part, who
testified that Pangburn boarded with Bull a part of two weeks,
but he thought he was not there more than three days, and
that Bull had agreed to charge not more than three shillings
per day for board. The court charged the jury, if from the
testimony before them, they should be of opinion that the
prosecutions before the justice were malicious, and without
probable cause, and that the defendant knew the facts to be
so, before and at the time of such prosecutions, they ought
to find damages for the plaintiff, otherwise they should find
the defendant not guilty. The defendant excepted to the
charge. The jury found a verdict for the plaintiff, for $7,25
damages, on which judgment was entered.

*A. C. Paige*, for plaintiff in error. An action for a mali-
cious prosecution will not lie, unless the plaintiff in the suit
complained of, was arrested or held to bail. The gist of the
action is the unfounded *arrest*, (2 *Wils.* 305,) for no action
can be supported merely for a malicious suit. (1 *Salk.* 14.
1 *Bos. & Pul.* 205. *Com. Rep.* 190. 1 *Chitty's Plead.* 136.
2 *id.* 291. 1 *Bacon's Abr.* 96. *Peters' R.* 207. 2 *Esp. N.
P.* 526. *Wheaton's Selwyn*, 809.) To bring a *civil action*,

though the plaintiff has no grounds, is not actionable, because it is a claim of right, and the plaintiff is liable to costs. It is not so, where a criminal prosecution is maliciously instituted; there the defendant recovers no costs. It is said, in Day's edition of *Coke's Littleton*, that the action lies whenever damage to property or expense is incurred; but the cases cited to support this proposition are all criminal prosecutions.

The want of probable cause was not shewn. On the contrary, from the evidence it appears, that had the defendant contested the claim of the plaintiff, there would have been sufficient, at least, to cause a jury to pause; and if so, the action for a malicious prosecution cannot be sustained. (*Smith v. Macdonald, 3 Esp. N. P. Cases, 7.*) The want of probable cause must be expressly proved, and cannot be implied. (2 *Phil. Ev.* 112, 113, 116. 7 *Cowen,* 284, 715.) Whether there was or was not a want of probable cause, was erroneously submitted to the jury. (7 *Cowen,* 715, 637.) The plaintiff below should have been nonsuited for the variance between the proof and the declaration as to the time of the service of the summons.

*Taber,* for defendant in error. The variance was immaterial. The time of the suing out of the summons, and of its return, were truly stated, and it was proved to have been regularly served; the stating of the day of service was, therefore, wholly immaterial, and being repugnant to precedent matter truly stated, may be rejected as surplusage. (1 *Chitty's Pl.* 385, 6. *Idem,* 233, 4. 7 *Cowen,* 42.)

An *arrest* is not necessary to sustain this action. Any *malicious injury* caused to the plaintiff, by the prosecution of vexatious suits which the defendant knew to be without probable cause, gives the plaintiff a right of action. The action is sustainable upon the general and salutary maxim of the common law, that there can be no civil injury without a remedy, and that remedy, when no other is designated, is an action on the case. (3 *Black. Comm.* 123.) On this principle, actions have from time to time been sustained by the courts, although new and unprecedented. (*Cro. Jac.* 478.

1 *Hen. & Munf.* 585. 1 *Salk.* 19, and 1 *Brown's Par. Cas.* 45, *S. C.* 11 *Johns. R.* 136.)

It is true, there is no *English* case which decides that an action can be maintained under circumstances precisely like those upon which this is founded, for the obvious reasons, that in England there is no court precisely analogous to our justices' courts, and the costs there are so heavy as to deter parties from bringing civil suits for the mere purpose of vexation. Not so in a justice's court, where, for a trifling expense, a party may gratify his malice, and subject his adversary to enormous charges. There are, however, cases in which principles are established amply sufficient to support this action. Thus, in *Waterer* v. *Freeman,* (*Hob.* 206, 266,) which was an action for suing out a second *fieri facias,* and selling the plaintiff's goods, the defendant having before taken other goods under a former *fieri facias,* the action was adjudged to lie, although it was objected it was a civil proceeding, because the proceeding was utterly without ground, and that known to the defendant himself, for the undue vexation and damage to the plaintiff. So, too, Lord Ch. Justice *Rolle,* in the case of *Atwood & Munger,* (*Styles' R.* 378,) lays down the same general rule. In the case of *Brown* v. *Chapman,* (1 *Wm. Black. R.* 427,) Lord *Mansfield* held, that this action would lie for maliciously suing out a commission of bankruptcy ; and the same rule is laid down in *Temple* v. *Kellingworth,* (12 *Mod.* 4.) These, and other cases, are collected and reviewed in *Hargrave's notes to* 3 *Coke Littleton,* 161, *note* 4, *s.* 4, and the principles here contended for, illustrated and supported. In *this state,* this court, in the case of *Van Deusor* v. *Linderman,* (10 *Johns. R.* 106,) give a definition of this action, which strictly embraces this case : "To sustain a suit for a former prosecution, it must appear to have been *without cause* and *malicious.*" In *Connecticut,* Gould, J., in the case of *Luddenton* v. *Peck,* (2 *Conn. R.* 700,) pronounces the doctrine of Lord Hobart, in *Hob.* 206, 266, to be a position which no one ever doubted. In *Massachusetts,* this action was held to lie for the malicious suing out of an attachment against property. (*Stone* v. *Swift,* 4 *Pick. R.* 389.)

ALBANY,
Oct. 1828.

Pangburn
v.
Bull.

The cases relied on by the plaintiff in error, are all based on the case of *Saville* v. *Roberts,* reported in 1 *Salkeld,* 13. That was an action for prosecuting a *malicious indictment,* and the opinion pronounced as to the effect of a *civil suit* is a mere *dictum ;* but even in that case, though the court say, that to bring an action where there is no good ground is not actionable, because it is a claim of right, &c. ; yet it is added, "if one has no cause of action at all, and yet maliciously sues the plaintiff, to the intent to imprison him for want of bail, or *to do him some special prejudice,* an action on the case lies."

Whether the want of a probable cause was sufficiently proved, was properly submitted to the jury. They were substantially instructed, if they believed, from the evidence, that the suits before the justice were maliciously prosecuted by the defendant, with a knowledge that he had no cause of action against the plaintiff, they ought to find for the plaintiff, otherwise for the defendant.

*By the Court,* WOODWORTH, J.   The declaration alleges, that the first summons issued on the *thirtieth* day of March, and the proof is, that it was served on the *fifteenth* of that month ; and for this variance, the defendant moved for a nonsuit, which was denied by the common pleas, and correctly. The time of service is not a material allegation. Besides, it appears that the summons in each cause was regularly served. The day of service, as stated, was impossible ; it contradicted what had been before alleged, viz. that the summons issued on the *thirtieth* day of March ; it must, therefore, be rejected, and then the declaration is left without any affirmation as to the day of service, but containing an averment *that the summons was served, and that the party appeared.*

From an examination of the cases, it appears that an arrest and holding to bail are not indispensably necessary, in order to maintain an action for a malicious prosecution. It has been sustained in cases where there was neither an arrest or bail ; and when it is considered that malice and the want of probable cause are the foundation of the action, it would seem, on principle, to reach cases where the injury would be equally

great, although the proceeding did not require an arrest or bail. Thus, in *Van Deusor* v. *Linderman*, (10 *Johns. R.* 106,) the court say, "To sustain a suit for a former prosecution, it must appear to have been without cause, and malicious." In *Brown* v. *Chapman*, (1 *Black. R.* 427,) it was held that an action on the case lies for suing out a malicious commission of bankruptcy. In the case of *Reynolds* v. *Kennedy*, (1 *Wils.* 232,) the plaintiff commenced an action for a malicious prosecution, in seizing and detaining a quantity of brandy. Under the circumstances, the action was not sustained, and principally on the ground that the prosecutor, (who had exhibited an information against the plaintiff, alleging that he intended to carry away the brandy without paying the duty,) had not been guilty of any malice. It is observed by the court in that case, the express malice and grievance must be laid in the declaration, and proved ; and it is not enough to say the defendant brought an action against the plaintiff *ex malitia* and *sine causa, per quod* he put the plaintiff to great charges. I understand from this doctrine, that something more than a general allegation that a suit was commenced maliciously, must be stated ; a particular grievance must be alleged. I incline to think the plaintiff has complied with this rule, by setting out the several suits, adjournments and proceedings, which constituted the grievance complained of, and from which resulted the damage sustained. The court further observe, that if an action upon a false surmise be brought in a proper court, an action does not lie against him that brought it, and thereby charge him with it as a fault directly, as if the the suit itself was a wrong act for *executio juris non habet injuriam ;* but the gist of this sort of actions arises from some evil practice or malice in him who sues or prosecutes. It seems, therefore, to me, that although in the case of *Reynolds* and *Kennedy* the plaintiff failed, the principles advanced apply extensively, and are not confined to cases of an arrest or bail.

The case of *Waterer* v. *Freeman*, (*Hobart*, 206, 266,) recognizes the doctrine, that although an action be brought in a proper court, if the suit or proceeding be utterly without

ground, and that known to the person himself, an action lies for the undue vexation and damage to the plaintiff. Chief Justice Hobart, in delivering the opinion of the court, went into a full exposition of the principles upon which the right of recovery was founded ; and although the injury was against the property, the action was held to lie.

The question remaining to be considered, is, whether there was sufficient evidence of malice, and the want of probable cause. The plaintiff was bound to shew both: The rule seems to be, that from the want of probable cause, malice may be, and commonly is implied ; but from the most express malice, the want of a probable cause cannot be implied. (4 *Burr.* 1974. 1 *D. & E.* 544.) The question of probable cause is a mixed question of law and fact. Whether the circumstances alleged to shew it probable or not probable, are true and existed, is a matter of fact ; but whether, supposing them true, they amounted to a probable cause, is a question of law. (1 *D. & E.* 545.) The court observe, that upon this distinction proceeded the case of *Reynolds* and *Kennedy*, (1 *Wils.* 232.)

The court below erred in submitting both the law and the fact to the jury. This was necessarily the consequence of the charge ; for the court instruct the jury, that if from the testimony they should be of opinion that the prosecutions were malicious and without probable cause, and the defendant knew the facts to be so, they ought to find damages for the plaintiff. The jury found damages for the plaintiff. Probably they had no difficulty in arriving at the conclusion that the defendant's motives were malicious, after proof of the defendant's declaration that he would bring the plaintiff four times to Guilderland for the same cause, and the course he pursued to effect the object in view, but they also passed on the question of want of probable cause ; and although the court ought to have instructed the jury whether, on the supposition that certain facts were established, they would show the want of probable cause, still, if on a review of the case by this court, it shall appear that, from the facts not disputed at the trial, there was evidently a want of probable cause, the verdict ought not to be set aside for the error of the court below in

this respect, because this court are called on to pronounce on that question ; and if they see that the jury have not erred in point of law, although the charge was erroneous, no injury has been done to the defendant below, of which he has a right to complain. In making this remark, however, it must be understood, that if the evidence as to any material facts is contradictory, or leaves the question doubtful whether the fact existed or not, then the error of the court is good ground for a reversal, inasmuch as this court cannot take upon itself to draw inferences from conflicting testimony ; this is the exclusive province of the jury. On these principles, I will examine the question as to probable cause. It is conceded that the defendant boarded with the plaintiff during the sitting of the circuit court, a part of two weeks, at the price of three shillings per day. The plaintiff's witness thinks he boarded as long as three or four days ; the defendant's witness thinks he was not there more than three days. The length of time is thus left uncertain—a defect which the court cannot supply. If the finding of this fact, agreeably to the opinion of the defendant's witness, would make out probable cause, the defendant is entitled to have a jury pass upon it under a proper charge from the court ; consequently, that fact must be put out of view, or rather we must determine whether, on the supposition that the defendant boarded three days only, there was any probable cause for calling on the plaintiff by action to refund. It seems the defendant did not pay at the time. He was afterwards written to, and when he paid the 12s., he made objections, which have already been noticed. The plaintiff in this cause gave the defendant a receipt. There is no reason to doubt that the charge of the plaintiff was made in good faith ; still, if, in fact, the defendant had boarded but three days, the plaintiff received more than was due. Had there been no diversity of testimony as to the number of days, and the plaintiff had received payment only for the ascertained time, I do not perceive how the defendant could show the least color or pretence for his action ; it would, in that case, be stript of even the semblance of plausibility. But when that fact remains somewhat doubtful from the testimo-

ny adduced, the inquiry is, whether the settlement, payment and receipt, were absolutely conclusive, so as to preclude the inquiry as to any excess of compensation received by the plaintiff. If the defendant was not concluded by the payment, provided he could shew an overcharge, then it follows that there was probable cause. If the testimony in his power to produce, rendered the fact of over-payment probable, and al-. though a jury may have found against him, nevertheless it could not correctly be affirmed that there was the absence of probable cause. On this point the evidence is nearly in equilibrio, and perhaps a jury might be justified in finding either way. If it be admitted that the defendant boarded three days, and that had the matter been contested in a court of law, no more than 9s. could have been recovered; yet, here, the defendant, with full knowledge of the fact, elects to pay 12s., the sum demanded, and takes a receipt in full of the plaintiff's claim : he cannot afterwards litigate the same question in an action to recover back a part. The defendant had knowledge of the facts, and is presumed to have knowledge of the law. Ignorance is not pretended. The defendant, besides, was informed no action would lie. There may have been error ; but no fraud, on the part of the plaintiff, can be presumed. This doctrine is well settled in *Bilbie* v. *Lumley*, (2 *East*, 469.) It was held, that money paid by one with full knowledge, or the means of knowledge, of all the circumstances, cannot be recovered back again, on account of such payment having been made under an ignorance of the law. Lord Ellenborough asked the counsel whether any case could be stated to that effect, to which no answer was given. In 2 *Johns. R.* 165, chief justice Kent considers this case as settling the law in England, and observes that the law seems to be in conformity with the doctrine anciently taught in the Doctor and Student.

In *Brown* v. *McKinally*, (1 *Esp. Rep.* 279,) lord Kenyon held, that where a party sued on a claim which he knows to be unfounded, pays it voluntarily and with notice, it is not recoverable back in assumpsit, though at the time he pays it he *declares* that he pays it without prejudice to his right to recover ; and observed, that to allow it, would be to try every

such question twice. It then appears that there was no probable ground on the fact or the law, but the want of it. A case so palpably unfounded, and known to be so, warrants the inference that the prosecution was intentionally vexatious. This, coupled with the avowed purpose of the defendant to call the plaintiff to Guilderland four times, a distance of fourteen miles, shews very satisfactorily that there was express malice. The judgment of the court below is affirmed.