Luby vs. Bennett.

---

Luby, Respondent, vs. Bennett, Appellant.

*October 15 — November 5, 1901.*

111     613
59 LRA   504

*Malicious prosecution: Termination of wrongful action: Pleading: Interference with person or property essential: Partnership: Damages.*

1. A right of action for malicious prosecution will not accrue to a person till the wrongful action against him shall have proceeded to a final determination in his favor.

2. If a complaint, in an action to recover damages for a malicious prosecution, does not state that the wrongful action has been terminated in favor of the plaintiff, it will be open to demurrer for insufficiency.

3. It is not essential to the maintenance of an action for damages for a malicious prosecution that all the proceedings in such prosecution, proper to be had therein, took place before such action was commenced; it is sufficient if, before the commencement of such action, the issues material to the *bona fides* of the alleged malicious prosecution were decided and closed in favor of the defendant therein by a final judgment.

4. A judgment in an action which is subject to appeal to a higher tribunal than the one in which it was rendered, is nevertheless final for the purpose of an action to recover damages for the malicious prosecution thereof.

5. It is not necessary to allege in a complaint, in an action to recover damages for malicious prosecution, that judgment has been rendered in the wrongful action in favor of the defendant therein and that such judgment has not been appealed from or reversed; it is sufficient to allege that judgment has been rendered in the wrongful action in favor of the defendant therein. Subsequent proceedings in such action, impairing the effect of such judgment as a foundation for an action for malicious prosecution, if not disclosed by the complaint, can only be taken advantage of by the defendant as defensive matter.

6. The general rule which prevails in England, and has the greater support of judicial and elementary authority in this country, is that a civil action, maliciously prosecuted, where neither the person nor the property of the defendant is interfered with inflicting special damages to him, will not sustain an action for malicious prosecution.

7. An action to wind up a partnership on the ground of misconduct of the defendant partner, and the deprivation of such defendant, in such action, of his right to the possession and enjoyment of the partnership property, is not a civil action interfering with neither the person nor property of the defendant, within the general rule above stated. On the contrary, it belongs to that class of actions that will sustain an action for malicious prosecution because of the injury to the good name and fame of the defendant therein to an extent not remediable by a mere vindication of him upon the trial and a judgment for costs; moreover, it interferes with his property to all intents and purposes the same as an attachment thereof would, and in such a way that damages, other than those

Luby vs. Bennett.

incident to an ordinary civil action maliciously prosecuted, are presumed.

8. In an action for damages for a wrongful interference with personal or property rights, a specific allegation as to damages, specifying the amount thereof, is not essential to the plaintiff's cause of action to recover such damages as are necessarily inferable from the facts alleged.

[Syllabus by MARSHALL, J.]

APPEAL from an order of the circuit court for Rock county: R. G. SIEBECKER, Judge. *Affirmed.*

Action to recover damages. The complaint stated the following as a cause of action: Plaintiff and defendant, from March 27 to November 6, 1897, were copartners in the shoe business in Janesville, Wisconsin. Plaintiff contributed to such business $4,400 in money and gave his personal attention thereto, which was reasonably worth $100 per month. The sales were $17,000, and there was a profit of thirty-three per cent. thereon, one half of which justly belonged to plaintiff. On the last day named defendant maliciously and without probable cause commenced an action in the circuit court for Rock county, Wisconsin, charging plaintiff, among other things, with having wrongfully taken from the assets of the firm, in goods and money, $2,000 to $2,500 and appropriated the same to his own use, and sold goods on credit without making any account thereof, intending to collect therefor and convert the proceeds to his exclusive benefit. The prayer was for a dissolution of the partnership and for a receiver. Without notice to this plaintiff, defendant procured the appointment of himself as receiver, and thereafter, pursuant thereto, took exclusive control of the firm property and business, and subsequently sold the same at a great sacrifice, secretly bidding the property in for his own benefit, whereby plaintiff's interest in the firm assets was wholly lost to him. The purpose of the action brought by defendant as stated was to accomplish the result before stated. By reason of the facts plaintiff was in-

jured in his good name, was caused much mental pain, was seriously prejudiced in his efforts to obtain profitable employment, and caused to expend upward of $1,500 in defending himself against the unjust action. Such proceedings were finally taken in such action that it was finally decided that the charges against plaintiff were false and malicious. Upon such facts plaintiff asked judgment in the sum of $10,000.

Defendant demurred to the complaint for insufficiency, and the demurrer was overruled.

The cause was submitted for the appellant on the brief of *Sutherland & Nolan,* and for the respondent on that of *Winans & Russell.*

MARSHALL, J. A right of action for damages for malicious prosecution does not accrue till the wrongful proceeding has been brought to final determination in favor of the defendant or person accused. *Pratt v. Page,* 18 Wis. 337; *Winn v. Peckham,* 42 Wis. 493, 499; *Woodworth v. Mills,* 61 Wis. 44; *Lawrence v. Cleary,* 88 Wis. 473; *Lowe v. Wartman,* 47 N. J. Law, 413; *Comm. v. McClusky,* 151 Mass. 488. Hence, as indicated in the authorities cited, in an action to recover compensation for such a wrong, such final determination must be distinctly alleged in the complaint and proved upon the trial, the same as any other fact essential to the cause of action, or the pleading will be open to successful challenge for insufficiency. Appellant now invokes that rule, but as we read the complaint it seems that it is very clearly alleged that the wrongful prosecution was ended by a judgment in favor of the defendant therein before this action was commenced. The meaning of the language of the pleading, "It was finally decided and adjudged in said action on the 25th day of September, 1900, that said action was without foundation and was maliciously and unjustly begun, and that this plaintiff was and had not

been' guilty of any wrong, and awarded this plaintiff judgment therein against the plaintiff therein (the defendant in this action)," leaves no room for reasonable controversy but that the alleged wrongful prosecution was closed by a judgment in favor of respondent prior to the commencement of this suit. It is said that the receiver appointed had not made his report when this action was commenced, and that it indicates that the alleged wrongful prosecution was not ended. The rule invoked does not require that all proceedings that may be had or are required in an action to finally work out or enforce the rights of the parties shall occur before a cause of action will accrue to the defendant therein to prosecute the plaintiff for maliciously commencing and carrying on such action. It requires only that the issues material to the question of the *bona fides* of such action shall be tried and closed by final judgment. That was done in the case in question, notwithstanding the provisional remedy or ancillary proceeding therein, to control, administer, and preserve the property involved, to await the final determination of the rights of the parties, was not fully closed up.

It is suggested that the action cannot be said to have been finally closed when this action was commenced, because the right of appeal from the judgment to this court existed. There is authority to the effect that a judgment in favor of the defendant in the alleged wrongful action, appealed from to a higher court, does not satisfy the element of want of probable cause, and is insufficient to sustain a suit for malicious prosecution of such action. *Reynolds v. De Geer*, 13 Ill. App. 113; *Nebenzahl v. Townsend*, 61 How. Pr. 353. In the first of such cases the decision went upon the ground that the alleged wrongful prosecution was in a justice's court and that the appeal from the judgment opened up the whole matter, giving the plaintiff therein a right to a trial *de novo;* and in neither case was the question under discussion raised by an objection to the sufficiency of the com-

Luby vs. Bennett.

plaint, but the status of the alleged wrongful prosecution was treated as matter of defense. *Nebenzahl v. Townsend* is supported by numerous citations from English authorities to the effect that the plea of a pending appeal from the judgment in the first action is a good defense. In *Ingram v. Root*, 51 Hun, 238, it is said that it is essential to allege in the complaint that the judgment in plaintiff's favor in the first action has not been appealed from or that it has been appealed from and affirmed. No authority is cited to support that view, and none which we may safely follow exists. The decision is out of harmony with all others in the New York courts, and contrary to the settled law as declared by its highest court, as is clearly evidenced by *Marks v. Townsend*, 97 N. Y. 590, where it was held that a final judgment, in an action alleged to have been maliciously brought, satisfies the essential element of a final determination of the wrongful prosecution in an action to recover damages for such a wrong, notwithstanding the right of appeal therefrom exists; and that, if an appeal has been taken from the judgment and is actually pending, the judgment, till set aside or reversed, will stand for want of probable cause as much as any judgment can; that a pending appeal is effectual only to sustain an application for an order staying proceedings till the appeal shall have been determined. It is not necessary here to go that far. It is sufficient to hold that, on the question of the status of the alleged wrongful prosecution, it is sufficient to allege, in the action for damages on account of it, that judgment was rendered in favor of the defendant therein; and that if the defendant in the action for damages desires to defeat the plaintiff on that question, he must lay the foundation therefor by answer instead of by relying on an objection to the complaint by a demurrer for insufficiency (*Carter v. Paige*, 80 Cal. 390); that, while the pendency of an appeal may constitute a defense, in the absence of anything to show that there is a pending

appeal from the judgment the presumptions are in favor of the validity and justice thereof; that no allegation on that subject is necessary on the part of the person relying thereon; and that the mere right of appeal from a judgment in an alleged malicious prosecution does not affect the right of the defendant therein, if he is the prevailing party, to pursue his prosecutor in an action for damages.

The further claim is made that the complaint is insufficient because it shows that in the alleged wrongful prosecution the defendant was brought into court by the mere service of a summons, neither his personal liberty nor his property being interfered with. If the nature of the suit were such as appellant's counsel claim, there would be much authority to sustain their position. The rule in England, when this country was within its jurisdiction, was and still is, that since costs are allowed to the successful defendant in a civil suit, they are presumed to compensate him for all damages suffered, if neither his person nor property is interfered with, regardless of whether the prosecution is maliciously wrongful or not. Ordinarily we would say that such rule should be regarded as part of the common law and binding upon courts here till changed by statute, the same as any other common-law principle. But it does not seem to have been so regarded to any great degree. Courts have treated the subject of whether the right to compensation for malicious prosecution of a mere civil case, without interference with person or property, exists, as matter of judicial policy, to be determined according to varying opinions of judges of supreme judicial tribunals; though the decisions in regard thereto, found in the books, are not based on that ground to any great degree, but on what was supposed to be the weight of authority. The result is that on an important branch of the law, that has been settled in England since costs were allowed to the successful defendant by the statute of Marlbridge (52 Hen. III, 1267) the

courts of the states of this Union, and the text-writers as well, are in as much confusion as in respect to any other branch of the law that could be suggested.

What we say as to the law of England is supported by the following quotation from the opinion of Lord BOWEN in *Quartz Hill C. G. M. Co. v. Eyre*, L. R. 11 Q. B. Div. 674, 690:

"The broad cánon is true that in the present day, and according to our present law, the bringing of an ordinary action, however maliciously and however great the want of reasonable and probable cause, will not support a subsequent action for malicious prosecution. . . . The counsel for the plaintiff company have argued this case with great ability; but they cannot point to a single instance since Westminster Hall began to be the seat of justice in which an ordinary action, similar to the actions of the present day, has been considered to justify a subsequent action on the ground that it was brought maliciously and without reasonable and probable cause."

To support what we have said as to the confusion of authority in this country, we refer to the following: In 3 Lawson, Rights, Rem. & Pr. § 1082, we are informed that "most of the earlier cases in the United States, and a few of the recent ones, follow the English rule; but others, and it would seem on better grounds, sustain the action," where neither person nor property is interfered with in the alleged wrongful action. The note to the text indicates that the authorities in favor of the English rule are much more numerous and are as recent as those to the contrary, and that the latter are based almost wholly on *Pangburn v. Bull*, 1 Wend. 345; *Whipple v. Fuller*, 11 Conn. 582; and *Closson v. Staples*, 42 Vt. 209. An examination of those cases indicates that the rule, at its inception in this country, was founded in error.

The first invasion of the common-law rule seems to have been made in *Pangburn v. Bull* in 1828; the next in *Whipple v. Fuller*, 1836. In the first case it seems that the

change in the ancient English rule, founded on the statute of Marlbridge, was overlooked. All the supporting American authorities cited by the court were cases of arrest and bail. In the Connecticut case the change in the English rule was recognized, but the court declined to follow it, preferring, for reasons stated, to follow the doctrine established prior to the statutory right of successful defendants to costs. The Vermont court followed Connecticut and adopted its reasoning. The cases referred to were followed in *Eastin v. Bank of Stockton*, 66 Cal. 123, though it was said that the weight of authority, American as well as English, and the text-writers, is the other way. In *Kolka v. Jones*, 6 N. D. 461, it seemed to the court that the weight of American authority was against the English rule. In 14 Am. & Eng. Ency. of Law, 34, it is said the authorities on the question are evenly balanced. The author, for support, refers to an article by Mr. John D. Lawson, published in 1882. 21 Am. Law Reg. 281, 353. Other writers, including some judges, have cited Mr. Lawson's article as if it accorded with the idea that the English rule is condemned by the weight of authority in this country. A careful reading of such article shows that the writer's conclusion was to the contrary, and that courts and text-writers who have referred to it to support the departure from the English rule have adopted the author's idea as to what is the better rule instead of the one that has the greater support in American decisions. Here is his conclusion:

"We have now reviewed all the American cases, *pro* and *con*, and the weight of authority appears to be against the right of action for the unfounded and malicious prosecution of an ordinary civil action. With the majority are all but one of the text-writers we have cited,— Swift, Townsend, Addison, and the authors of the American leading cases, who follow the English adjudications; Mr. Weeks, who limits the right to 'exceedingly vexatious suits where special damage has been actually suffered;' and Judge Cooley, who

discourages the remedy without positively denying the right. On the other side is Mr. Hilliard, who evidently favors the action, but unfortunately relies upon cases which do not sustain it at all.    Of.the thirteen cases we have just examined, three   .   .   .   hold that the action is not sustainable *because* it is not, three that it will not lie because the defendant has his costs, which, in England, is considered a sufficient remedy.   .   .   .   In but five cases: *Pangburn v. Bull*, 1 Wend. 345, in New York; *Whipple v. Fuller*, 11 Conn. 582, in Connecticut; *Closson v. Staples*, 42 Vt. 209, in Vermont; *Marbourg v. Smith*, 11 Kan. 554; and *Woods v. Finnell*, 13 Bush, 629,— do the courts recognize that there is a wrong for which there should be a remedy.    But while the weight of authority denies the action, the weight of reason allows it.    We have set out at length the arguments of the courts *pro* and *con*, and no one can read them without being struck with the weakness of the position assumed by the majority of the American courts that have been called upon to deal with this question, and of the writers who have stated the law. as they understood the decisions."    21 Am. Law Reg. 368, 369.

In *Smith v. Mich. B. Co.* 175 Ill. 619, the court said that the great weight of American authority and the better reasoning are in accord with the English rule; that it was preferable to follow what Mr. Lawson said as to which way the greater weight of authority points, since the court's examination of judicial and elementary authority on the subject confirmed him, than to follow his judgment as to what the law ought to be.    In Stephen, Mal. Pros. (Am. ed.), 21, it is said in the note that the rule is well settled in the United States contrary to the rule of the English courts.    How valueless the writer's work is to a correct understanding of the subject is seen from the fact that *Whipple v. Fuller*, *Pangburn v. Bull*, *Closson v. Staples*, and other cases following their lead, are cited as holding the same as *Eberly v. Rupp*, 90 Pa. St. 259; *Muldoon v. Rickey*, 103 Pa. St. 111; *Wetmore v. Mellinger*, 64 Iowa, 741, and other cases which in fact distinctly follow the English rule.    The writer of the note says, apparently intending to use language in accord

Luby vs. Bennett.

with the opinion of Beck, J.: "And in such cases the plaint-
iff is entitled to recover the damages sustained by him;"
while in fact Justice Beck used this language:

"We think the doctrine is well established by the great
preponderance of authority that no action will lie for the
institution and prosecution of a civil action with malice and
without probable cause, where there has been no arrest of
the person or seizure of the property of defendant and no
special injury sustained which would not necessarily result
in all suits prosecuted to recover for like causes of action."

So careful a writer as Judge Cooley does not venture to
say definitely which way the weight of authority prepon-
derates in this country, though his language leads one to
believe that, in his judgment, it is in favor of the English
rule. He confines the civil actions that may support one
for damages for malicious prosecution by the settled law,
to maliciously instituting and prosecuting proceedings in
bankruptcy, suits in which the defendant is arrested, suits
in which the property of the defendant is attached, and pro-
ceedings to have a party declared insane and placed under
guardianship. He says, as to other civil actions:

"In some cases it has been held that an action may be
maintained for the malicious institution without probable
cause of any civil suit which has terminated in favor of the
defendant; but the English authorities do not justify this
statement, and there is much good reason in what has been
said in a Pennsylvania case (*Mayer v. Walter*, 64 Pa. St. 283),
that 'if the person be not arrested or his property seized, it
is unimportant how futile and unfounded the action might
be; as the plaintiff, in consideration of law, is punished by
the payment of costs.' If every suit may be retried on an
allegation of malice, the evils would be intolerable, and the
malice in each subsequent suit would be likely to be greater
than in the first." Cooley, Torts (2d ed.), 219.

The first significant case found in the American decisions
is *Ray v. Law*, Pet. C. C. 207, decided in 1816, where the
English rule was followed to the letter, it being said that,
"If bail be not demanded, it is unimportant how futile and

unfounded the action may be, as the plaintiff is punished by
the payment of costs and the defendant is not materially
injured." The following authorities, in addition to those
already referred to, support Judge Cooley's observation:
*McNamee v. Minke,* 49 Md. 122; *Supreme Lodge A. P. L.
v. Unverzagt,* 76 Md. 104; *Bitz v. Meyer,* 40 N. J. Law, 252;
*Potts v. Imlay,* 4 N. J. Law, 330, 7 Am. Dec. 603; *Wood-
mansie v. Logan,* 2 N. J. Law, 93; *Mitchell v. S. W. R. Co.*
75 Ga. 398; *Kramer v. Stock,* 10 Watts, 115; *Gorton v. Brown,*
27 Ill. 489; *Ely v. Davis,* 111 N. C. 24; *Cade v. Yocum,* 8
La. Ann. 477; *Thomas v. Rouse,* 2 Brev. 75. The doctrine
of those cases and the mischief it is aimed at are well indi-
cated by the following language from the opinion in *Ely
v. Davis, supra:*

"We may as well say that the law seems to be settled by
the weight of authority, although there are some decisions
to the contrary, that an action will not lie for malicious
prosecution in a civil suit, unless there was an arrest of the
person or seizure of property, as in attachment proceedings
at law or their equivalent in equity, or in the proceedings
in bankruptcy, or like cases, where there was some special
damage resulting from the action, and which would not
necessarily result in all cases of the like kind."

"The policy of the law, while encouraging arbitrations
and settlements without suit, has ever been to afford fair
opportunity to all to have their claims determined in the
courts. To hold it now to be that in every case of failure
by the plaintiff to establish his allegation of fraud, there
being no special damage resulting therefrom, upon a sug-
gestion of malice and want of probable cause an action for
malicious prosecution would lie against him, would open
the floodgate to a species of litigation hitherto unknown in
North Carolina, the absence of which, up to the present
time, indicates that it has not heretofore been recognized."

The Iowa court, in *Wetmore v. Mellinger,* 64 Iowa, 741,
mentioned, as considerations for the doctrine that the ma-
licious prosecution of a mere civil suit, without interference
with the person or property of the defendant, will not sus-
tain an action for damages, the following:

"The courts are open and free to all who have grievances and seek remedies therefor, and there should be no restraint upon a suitor, through fear of liability resulting from failure in his action, which would keep him from the courts. . . . If an action may be maintained against a plaintiff for the malicious prosecution of a suit without probable cause, why should not a right of action accrue against a defendant who defends without probable cause and with malice?"

From what has been said it will be seen that the proposition submitted and contended for by appellant's counsel ought not to receive approval as the law of this state without the most careful consideration of the subject in a case necessarily depending upon a correct solution of it. As at present advised, we are not prepared to say that such a case has been heretofore decided by this court. *Noonan v. Orton,* 30 Wis. 356, was not such a case. There the plaintiff's property was seriously interfered with by successive, unnecessary, and vexatious equitable levies thereon in garnishee proceedings, and the ground of the action was abuse of the process of the court. In our judgment the present case does not necessarily turn on the broad proposition contended for. The alleged wrongful action was not an ordinary suit, where neither person nor property was interfered with, and where there was no damage other than such as generally results from ordinary civil actions in such circumstances. The action was brought ostensibly for the purpose of winding up a partnership. Before it was commenced, respondent was in possession of the partnership property as much as appellant. The purpose of the action was to as effectually deprive him of that possession and subject it, *in invitum*, to the claim of appellant, as if it were levied upon by writ of attachment. Under such circumstances damages other than taxable costs necessarily follow. Moreover, special damages are expressly alleged in the complaint. The pleader says, in effect, that the purpose of the plaintiff was, by means of the winding-up proceedings, to obtain possession of the partnership property,

in form as an officer of the court for the benefit of the person legally entitled thereto, but in fact for the benefit of the plaintiff; and, through the forms of law, to administer the property ostensibly for the legitimate purpose of a winding-up suit, but in fact to enable the plaintiff to control the property, and, in an indirect way, to obtain the full title thereto; and that such purpose was fully consummated, whereby respondent's interest in the firm assets was wholly lost to him. The same reasoning that supports an action for damages for maliciously and without probable cause instituting and prosecuting proceedings to have a person declared a bankrupt applies to an action maliciously brought to wind up a partnership, founded on alleged misconduct of the defendant.

In quite a recent English case to which we have already referred (*Quartz Hill C. G. M. Co. v. Eyre*, L. R. 11 Q. B. Div. 674), wherein the rule that an ordinary civil action, neither the property nor the person of the defendant being interfered with, causing special damage, though maliciously brought and prosecuted, will not sustain an action for damages, was maintained with as much clearness and firmness as in any previous case, it was held that an action maliciously brought and prosecuted to wind up a partnership should not be classed with those where the damages to the defendant are deemed to be *damnum absque injuria;* but under the third head of actionable wrongs growing out of malicious prosecutions, laid down by HOLT, C. J., in *Savile v. Roberts*, 1 Ld. Raym. 374, 378, namely, actions where a man's fair fame and credit are injured. It was said that such an action is not like an ordinary action for fraud, where the wrong done by merely bringing the action is supposed to be remedied by the vindication of the defendant at the trial; but its effect is like that in wrongful proceedings in bankruptcy — the good name, fame, and credit of the person accused is necessarily seriously injured. That seems plain, and it is equally plain that such actions fall within

the class held to constitute a good foundation for an action for damages for malicious prosecution on account of the interference with property rights. Any particular method of interfering with property rights, as by writ of attachment, is not material. An equitable levy upon property, as in garnishee proceedings, or the deprivation of the defendant of his property by means of the appointment of a receiver, or any other means whereby his property is taken into the custody of the court or taken out of the custody of the owner and out of his free control, as in *Noonan v. Orton*, 30 Wis. 356, which, in the ordinary course of things, causes damage not reached by a mere judgment of vindication or for costs, is sufficient. This action was not commenced by service of a summons and prosecuted without the person or property of the defendant being interfered with directly to his damage; but, as before indicated, the defendant was deprived of the possession of his property, and a growing business, of which he was part owner, was abruptly stopped and closed out, necessarily causing loss to him, not only by depreciation in the value of the firm assets, but by destruction of the business in which the property was used, and by injuring respondent's good name and fair fame as a merchant and member of the community.

The further point is made that the complaint is insufficient because it does not contain an allegation that the plaintiff was damaged by the wrongs complained of to some specific amount. That must be ruled against appellant on the well-settled principle that, where damages are necessarily inferable from the facts alleged, a statement of such facts sufficiently states the damages. *Luessen v. Oshkosh E. L. & P. Co.* 109 Wis. 94; 4 Ency. of Pl. & Pr. 618.

*By the Court.*— The order appealed from is affirmed.