Turner, Appellee, *v.* Central Outdoor Advertising Co., Inc., Appellant.

(No. 6388—Decided June 5, 1944.)

Mr. *Arthur W. Gordon,* for appellee.
Mr. *Bert H. Long* and Mr. *Milton M. Bloom,* for appellant.

Ross, P. J. This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton county, entered upon a verdict in favor of the plaintiff.

The suit was brought to recover damages, both com-

pensatory and punitive, from the defendant, based upon the institution by the defendant of an action for injunction against the plaintiff, the granting of a temporary restraining order against plaintiff and the instituting of contempt proceedings against plaintiff; such suit, when heard upon the merits, for permanent injunction, being dismissed by the Court of Common Pleas.

It is alleged by plaintiff that the acts of the defendant were "wrongful and malicious and without reasonable or probable cause."

The first defense of the defendant was in effect a general denial including, however, admission of certain matters of record and allegations that the granting of the temporary restraining order was after notice to plaintiff and hearing by the court, and that at the hearing of the charges of contempt, plaintiff was found guilty as charged, and such proceedings were dismissed at costs of plaintiff.

A reply was filed in which it was alleged that the hearing upon application for a temporary restraining order was had after short notice to the attorney for plaintiff and the matter was not fully presented to the court. Plaintiff denied that he was found guilty of contempt. Otherwise, the reply was a general denial of new matter set up in the answer.

The plaintiff at one time was an employee of the defendant. After he left the employment of defendant, he engaged in the same type of business in the city of Cincinnati as that conducted by defendant, which is generally described as "outdoor advertising." The conduct of such business requires the securing of many suitable locations for the erection of display billboards and the exhibition of advertisements, usually painted signs on walls.

It is obvious that those industries interested in publicizing their products by means of such advertising will employ the agency which is able to secure the largest number of the most favorable positions for the purposes involved. This naturally causes those engaged in such "outdoor advertising" business to exert every effort to secure such positions.

It is apparent, also, from the evidence presented in the bill of exceptions, that very often it is to the advantage of a competitor to "block out" a sign erected by another competitor, for if an advertisement is so affected, the selling value of the space so obscured is rendered valueless, and the advertisement must be replaced in a new position as advantageous, or the patron's business will be lost.

The evidence shows that this form of rivalry existed between the plaintiff and defendant and that it presented a situation of "give and take." Both plaintiff and defendant resorted to "blocking out" tactics. Sometimes the practice resulted in a direct financial profit to the one who placed the sign in front of the other, by reason of the receipt of revenue from the use of such signs. Sometimes the only advantage was in obscuring the competitor's sign, thus depriving him of the space as a place for an advertisement.

It appears, also, that plaintiff secured a contract to "service" certain signs maintained by the defendant. Plaintiff claims that by virtue of such contract, defendant is obligated to pay him certain sums for such "services," but has refused to pay. No action, however, appears to have been taken by plaintiff to secure what is due him, by recourse to the courts.

Does the mere failure to pay a disputed account indicate malice?

Plaintiff also introduced evidence that defendant was indebted to him for other contractual obligations.

A suit was filed for this and dismissed by plaintiff, without prejudice.

Does the defense of such a suit indicate malice?

Whether such evidence of mere disputed obligations of the defendant to plaintiff is properly admissible in this kind of a case is certainly questionable.

A reading of the evidence shows clearly that there existed between the parties to this action the keenest competition and that each endeavored to secure as much business as possible and to prevent the other from advancing its business. All of these items of evidence were introduced to show malice on the part of defendant, or that plaintiff resorted to the same measures adopted by defendant, and that such expedients were incidents of the business in which each was engaged.

One particular case is cited by counsel for plaintiff as indicating an example of malice by defendant. In fact, it merely demonstrates what the defendant thought good business in the particular instance. The plaintiff purchased a building on which the defendant had a large sign imposed upon an iron framework, and resting upon brick foundations. The plaintiff offered to purchase the superstructure and foundations from defendant. It refused to sell and took down the framework and removed the foundations. The price offered for the structure would have produced a substantial profit to defendant over the value of the structure removed. It is also noted that defendant took away the brick foundations which would have been serviceable to plaintiff. It is apparent that defendant considered it better business to take down its structure than to sell it to plaintiff, although this resulted in immediate financial loss to defendant. Obviously, if the sign had simply been transferred to plaintiff, resulting in the replacing of his sign for that of defendant, the dif-

ference in cost of removal and sale might not have offset the prestige lost by the evident substitution of a sign of a competitor.

Such was the situation between these parties when the incidents occurred which led up to the filing of the injunction proceedings by the defendant.

In May 1940, the plaintiff obtained permission from the owner of a building known as the Blymyer building to place a painted sign on the south side of this building on Main street in the city of Cincinnati and he painted that portion of the south side of this building, extending above the roof of the adjacent building to the south, owned by the University of Cincinnati, with two large advertisements. In order to do this, it was necessary to hang ropes from the top of the Blymyer building, and some extensive use of the roof of the building on the south, owned by the University of Cincinnati, was incident to this work. Permission at that time was obtained from the University of Cincinnati to so use the roof of its building.

In June 1941, the defendant obtained a "lease" from the University of Cincinnati, permitting it to use the roof of the latter's building, adjacent on the south to the Blymyer building, for the purpose of erecting a sign or billboard thereon. The terms of this document will be considered later.

Thereafter, in August 1941, the plaintiff commenced to repaint the signs on the Blymyer building and, in so doing, again made extensive use of the roof of the university building. There is some evidence that paint was thrown upon the skylight in the roof of the university building, and that this caused the tenant of the upper floor to become irritated, resulting in his refusal to permit defendant to put bolts through the roof, which were necessary to the erection of a sign superstructure on such roof.

On August 11, 1941, the attorney for the defendant wrote plaintiff claiming a previous trespass against its exclusive possession of the university building roof and stating that further trespass would be prosecuted to the fullest extent of the law. The attorney, of course, was in error as to the "previous" trespass. The plaintiff ignored this letter, but did secure from the executive vice-president of the University of Cincinnati permission to again use the roof of its building for purposes incident to the repainting of the signs on the Blymyer building.

Strangely, this permission was not divulged to the defendant or the court even at the hearing upon application for a temporary restraining order.

The plaintiff continuing with its use of the university building roof, defendant filed suit for injunction, made an application for a temporary restraining order and gave notice of the hearing to plaintiff. The plaintiff was represented by counsel, hearing was had and evidence was introduced. No request was made by plaintiff in the instant case for a continuance. This occurred on Saturday morning on January 3, 1942. The restraining order was granted. The defendant in the case at bar gave a cash bond. No further action was taken by plaintiff in this case, who left his ropes, scaffolding and paraphernalia on the roof of the university building or hanging on the Blymyer building walls, until April 1942, when he removed same. Defendant then filed contempt proceedings and, upon hearing, the court dismissed the same at the costs of the plaintiff. Although such action was somewhat anomalous, no appeal was taken from this judgment.

The temporary restraining order required plaintiff to remove his equipment. Why he delayed from January until April does not appear.

His intention to remove in April however, was not

brought to the attention of the court. The defendant had every reason to believe that he had abandoned any intention to comply with such order.

In July 1942, the case was heard upon its merits, and the court then dismissed the petition for injunctive relief upon the theory that the "lease" from the University of Cincinnati to defendant did not give it exclusive use of the roof of the university building, but that such "lease" was in fact but a bare permit to use such roof for the purpose of erecting a sign thereon.

No appeal was taken by the defendant from that judgment.

In September 1942, an order was made for a refund of the bond posted upon the giving of the restraining order.

It is clearly apparent from the evidence that the defendant at all times acted strictly upon the advice of its counsel who was not associated with defendant in any other manner than its legal adviser, and that defendant made a full disclosure to its attorney of all facts necessary to form an opinion as to its rights. In fact, its counsel made, at its request, personal inspection of the situation presenting a basis for the determination of defendant to protect its rights in the premises.

The action of the defendant was predicated solely upon the advice of its counsel that the "lease" from the University of Cincinnati gave it a possession of such roof, which excluded the plaintiff from the use thereof, and that his use thereof was a violation of its legal rights as found in such document.

This "lease" is a lengthy document evidently prepared by an attorney. It contains many clauses protecting the rights of both "lessor" and "lessee." It evidently, in the opinion of the attorney for defendant,

gave it the exclusive right to the occupation of the roof of the university building. Neither the attorney for defendant nor defendant knew of the permission to use the roof given by the officer of the university until after the granting of the temporary restraining order. The judge who heard the application for this order, the plaintiff being represented at such hearing and being given ample opportunity to present his side of the case, was not advised of such permission and also found that the "lease" gave the defendant rights to sole occupation of the roof to the exclusion of plaintiff and that he was, therefore, violating the rights of defendant contained therein, thus entitling defendant to the restraining order.

The jury in its verdict assessed damages against the defendant in the amount of $13,253.25. The actual damages of plaintiff were trivial. Almost the entire sum must be considered as punitive damages. This indicates that the jury must have been swayed by considerations wholly unjustified by the evidence presented. It is probable that this result was produced at least in part by evidence permitted indicating the slender resources of plaintiff and the substantial size and importance of the defendant.

Now the terms of the "lease," which are more directly pertinent to the issues here presented, are:

"That the lessor shall at all reasonable times have access to said roof for the purpose of repairing, or painting the same and other parts of said building or for any purpose other than advertising, which will not interfere with the use and occupancy of the lessee. * * *

"That the lessee paying the rents and observing and performing all the obligations on the part of the lessee to be observed and performed hereunder, the lessee shall quietly and peaceably hold, occupy and enjoy said

premises, during said term, or any renewal thereof, without any let, hindrance or molestation by said lessor, or any person or persons claiming under it.''

While the conclusion that this ''lease'' does not give exclusive possession of the roof for all purposes is correct, it is apparent also that the language used in the clauses of the lease quoted is indicative that the defendant did have very substantial rights conveyed to it by the ''lessor.'' It is to be remembered, also, that the attorney for defendant advised defendant that the ''lease'' did give it exclusive possession. It cannot be supposed that able counsel for defendant would definitely mislead his client. It is evident also, therefore, that the defendant had the right to rely upon its counsel's advice that it did have such exclusive possession by the terms of the ''lease'' as to justify its action in instituting an action to enjoin the plaintiff from the infringement of the rights which it had just cause to consider existed.

Again, it is to be remembered that the court hearing the application for a temporary restraining order, had before it the ''lease'' and must undoubtedly have construed its terms as giving the defendant at least sufficient rights in the use of the roof, to warrant the issuance of the restraining order. On the question of legal advice and probable cause, the evidence is overwhelmingly in favor of defendant, and implied malice is, therefore, completely negatived. As far as actual malice is concerned, the general tactics adopted by the plaintiff and defendant were not dissimilar. Each sought, as has been pointed out, to limit the activity of the other. It cannot be said that the evidence is at all conclusive that the institution of the injunction proceedings was prompted wholly by a desire to prevent the plaintiff from repainting his sign or to hamper him in so doing. The use of the roof by the plaintiff was

calculated to embarrass the defendant in its relation, both with its lessor and the tenants in the university building, especially in the case of the tenant occupying the space directly beneath the roof. Certainly, its purpose in preventing such embarrassment cannot be considered as evidence of specific malicious intent.

It would seem that there are authorities supporting the right to institute an action for malicious prosecution, based upon an unsuccessful prosecution of a civil suit for injunction. The rule is stated in *Newark Coal Co.* v. *Upson*, 40 Ohio St., 17, 25, as follows:

"Was the second cause of action a good one?

"It may now be considered the approved doctrine, that, an action for the malicious prosecution of a civil suit may be maintained, whenever, by virtue of any order, or writ, issued in the malicious suit, the defendant in that suit has been deprived of his personal liberty, or of the possession, use, or enjoyment, of property of value. The name, or form, of the writ, or process, is immaterial. It may be an order of arrest, or of attachment, or of injunction.

"The malicious prosecutor cannot shield himself behind the interlocutory order of the judge, based upon his own malicious, *ex parte* application and affidavit."

The rule is stated without any discussion of the principle involved and without supporting authority. It is to be noticed that in the *Upson case,* an appeal was dismissed by the plaintiff in the injunction suit after an adverse judgment in the trial court, and also that a temporary restraining order was granted in an *ex parte hearing,* by which the plaintiff in the malicious prosecution action was excluded from his property for more than a year, and it is further to be noted that the defendant in the malicious prosecution action had seized the plaintiff's property by armed force pending the

filing of the action for injunction based on false and malicious averments.

In *Cincinnati Daily Tribune Co.* v. *Bruck,* 61 Ohio St., 489, 56 N. E., 198, 76 Am. St. Rep., 433, the first paragraph of the syllabus reads:

"As a general rule no suit will lie for the malicious prosecution of a civil action, where there has been no arrest of the person or seizure of property."

And, at page 490 of the opinion, it is stated:

"It is a well-settled general rule, that no recovery can be had by a defendant against a plaintiff for the malicious prosecution of a civil action, where there has been no arrest of the person or seizure of property. The cases relied on by the plaintiff in error do not support its claim. That of *Coal Co.* v. *Upson,* 40 Ohio St., 17, arose from a suit where a temporary injunction had been obtained *on false and malicious averments.* A temporary injunction imposes a restraint upon the owner over his property, as hurtful to him as if it were in fact seized; and, it was held, that for the malicious prosecution of such suit, an action would lie." (Italics added.)

This court, following the rule laid down in the first paragraph of the syllabus in the *Bruck case,* sustained an instructed verdict for the defendant in a suit for malicious prosecution based upon an action for an injunction, when a temporary restraining order had been granted. *Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* v. *Dumler,* 33 O. L. R., 380. It appears on reference to the general law on the subject that the courts in the United States are in sharp conflict. 34 American Jurisprudence, 707, Section 10. The Ohio authorities noted, therefore, must be a guide for conclusion on this phase of the controversy.

Independently of what has been noted as to these, however, it appears illogical to base an action for ma-

licious prosecution upon an appeal to the good conscience and sense of justice of the chancellor, when notice has been given and a hearing had.

It may well be, where automatic summary action of the law is invoked, as in attachment, that there would be some basis for permitting redress for loss not covered by a judgment for costs against the unsuccessful plaintiff in such attachment proceeding, even if a bond were given. On the contrary, where a full and frank disclosure of all the facts is presented in a court of equity, after notice, and the rights of the plaintiff in the suit for injunction are predicated upon the construction of a document conferring possessory rights in the plaintiff, and the court of equity so appealed to, considers the facts so fairly presented as to justify the issuance of a restraining order, it does seem that a different rule should prevail than is existent in cases of criminal prosecutions, or even in civil actions resulting in arrest of the person or seizure of property.

In *Peckham* v. *Union Finance Co.*, 48 F. (2d), 1016, the Court of Appeals of the District of Columbia cites with approval the first paragraph of the syllabus in the *Bruck case*. The suit for malicious prosecution in the federal case was based upon a claim that the defendant maliciously applied for the appointment of a receiver without probable cause to believe such appointment was justified. The reasoning of the court and its reference to the authorities justify repeating here:

"In our opinion the greater weight of authority in this country and the better reasoning support the view that no action will lie for the recovery of damages sustained by the prosecution of a civil action with malice, and without probable cause, when there has been no arrest of the person or seizure of the property of

the defendant, and no special injury sustained, which would not necessarily result in all suits prosecuted to recover for like causes of action. 'This doctrine is supported by the following consideration: The courts are open and free to all who have grievances and seek remedies therefor, and there should be no restraint upon a suitor, through fear of liability resulting from failure in his action, which would keep him from the courts. He ought not, in ordinary cases, to be subject to a suit for bringing an action, and be required to defend against the charge of malice and the want of probable cause. If an action may be maintained against a plaintiff for the malicious prosecution of a suit without probable cause, why should not a right of action accrue against a defendant who defends without probable cause and with malice? The doctrine surely tends to discourage vexatious litigation, rather than to promote it.' *Wetmore* v. *Mellinger et al.*, 64 Iowa, 744, 18 N. W., 870, 871, 52 Am. Rep., 465.

" 'If every suit may be retried on an allegation of malice, the evils would be intolerable, and the malice in each subsequent suit would be likely to be greater than the first.' 1 Cooley on Torts, p. 350 (Ed. 1906).

"In *Cincinnati Daily Tribune Co.* v. *Bruck,* 61 Ohio St., 489, 56 N. E., 198, 76 Am. St. Rep., 433, the Supreme Court of Ohio held that as a general rule no suit will lie for the malicious prosecution of a civil action, where there has been no arrest of the person or seizure of property. In that case a stockholder of an incorporated newspaper company, maliciously and without probable cause, commenced a suit against the company for dissolution and the appointment of a receiver, to the great injury of the company. The application was denied and the suit was dismissed. The court held that these facts did not constitute a cause of action, en-

titling the defendant to relief by way of damages, as there was no arrest of the person or seizure of property.

"This view is sustained by many authorities, among which are *McNamee* v. *Minke*, 49 Md., 122; *Supreme Lodge American Protective League of Baltimore City* v. *Unverzagt*, 76 Md., 104, 24 A., 323; *Pye* v. *Cardwell*, 110 Tex., 572, 222 S. W., 153; *Muldoon* v. *Rickey*, 103 Pa., 110, 49 Am. Rep., 117; *Smith* v. *Michigan Buggy Co.*, 175 Ill., 619, 51 N. E., 569, 67 Am. St. Rep., 242; *Bitz* v. *Meyer*, 40 N. J. Law, 252, 29 Am. Rep., 233; *Peterson* v. *Peregoy*, 180 Iowa, 325, 163 N. W., 224; *Abbott* v. *Thorne*, 34 Wash., 692, 76 P., 302, 65 L. R. A., 826, 101 Am. St. Rep., 1021; *Luby* v. *Bennett*, 111 Wis., 613, 87 N. W., 804, 56 L. R. A., 261, 87 Am. St. Rep., 897."

It, therefore, appears from the evidence that the defendant had probable cause to consider its rights so invaded as to justify resort to a court of equity in order that further invasion of such rights might be prohibited; that the defendant was not prompted by specific malice in instituting such proceeding; that it acted throughout its entire procedure under the advice of an attorney not connected with defendant except as its legal counsel; that the defendant made a full and fair disclosure of all facts necessary for an opinion by its attorney upon the legality of proposed action; that there being probable cause to believe its rights invaded, defendant cannot be charged with implied malice; and that there being no seizure of property or arrest of the person, and the temporary restraining order being granted only after notice and full hearing, no fraud, false statements or misrepresentation being chargeable against the defendant in obtaining the restraining order, such civil suit does not come within the exceptions to the general rule de-

nying the right to maintain an action for malicious prosecution based upon the institution of a civil action.

For these reasons, the motion for judgment *non obstante veredicto* should have been granted, and the judgment for the defendant, which the Court of Common Pleas should have entered, may be entered here.

*Judgment reversed.*

HILDEBRANT, J., concurs.
MATTHEWS, J., concurs in judgment.

MATTHEWS, J., concurring. It seems clear to me that this judgment must be reversed. Manifestly, it is excessive and against the weight of the evidence. My hesitancy has been as to whether final judgment should be rendered for the defendant by this court, but I have concluded that it should be. That conclusion is based on my opinion that as the temporary injunction and order of contempt were not made *ex parte,* but only after notice and hearing at which the plaintiff had full opportunity to present his side, the decision favorable to defendant furnished no basis for an action for malicious prosecution.

The elements of an action for wrongful initiation of a civil proceeding, as stated in 3 Restatement of Torts, 440, Section 674, are:

"One who initiates or procures the initiation of civil proceedings against another is liable to him for the harm done thereby, if (a) the proceedings are initiated (i) without probable cause, and (ii) primarily for a purpose other than that of securing the adjudication of the claim on which the proceedings are based, and (b) except where they are *ex parte,* the proceed-

ings have terminated in favor of the person against whom they are brought.''

And ''*ex parte*'' as used in the rule is defined in the comment on page 445 as: ''Proceedings are *ex parte* when relief is granted without an opportunity for the person against whom the relief is sought to be heard.'' And the necessity of a favorable decision, except where the order is made *ex parte,* is made clear by the rule that it is conclusive of probable cause, even though subsequently reversed and a contrary judgment finally rendered. 3 Restatement of Torts, 447, Section 675.

As the facts relating to the circumstances under which the temporary restraining order and order of contempt, were admitted, I think it follows that there was no issue of fact to be submitted to the jury, and the trial court should have held as a matter of law that the plaintiff had failed to prove an essential element of his case.

I do not believe that the court could hold as a matter of law that acting upon the advice of counsel was a defense. The burden of proving all the essential elements of this defense rested upon the defendant. For a shield to exist, many elements must be present. 3 Restatement of Torts, 416, Section 666. And the existence of these elements becomes an issue of fact, dependent, as in this case, upon the credibility of witnesses. In the case at bar the existence of the elements was dependent upon the credibility of one witness, as the attorneys did not testify. The issue of credibility could not be assumed by the court, even though there was no witness to the contrary.

The issue of probable cause in a malicious prosecution action is no different from any other issue of fact in Ohio. The court states the rule of law to guide the jury in the same way it does in any other type of case.

In *Ash* v. *Marlow,* 20 Ohio, 119, 129, the court said:

"There is no force in the objection that the judge did not instruct the jury that the facts relied on by defendants below, did, or did not amount to probable cause. 'Probable cause,' is a mixed question of law and fact; and if the facts are contested, the court must leave them to the jury with instructions as to what is 'probable cause.'"

And this early decision was emphatically adhered to in *Pennsylvania Rd. Co.* v. *Hobbs,* 96 Ohio St., 584, 118 N. E., 1085.

I do not think the court has the power to decide in this case that the advice of counsel was conclusively proven, so as to leave only the question of law, and that a finding by the jury of lack of probable cause would have been manifestly against the weight of the evidence even in the absence of a decision against the plaintiff upon hearing after notice. The fact that the defendant acquired no title to the real estate by virtue of its agreement with the University of Cincinnati did not necessarily preclude it from having a cause of action against plaintiff. It had a contract with the university which gave it rights against the university and against others who under certain circumstances interfered with those contractual rights. Furthermore, these personal rights did relate to real estate and the distinction between a personal right called a license, and a proprietary right is not so clear or so universally recognized even by lawyers and judges as to justify any one in saying that a mistake of one for another is wholly unjustified.

For the reason that the plaintiff failed to prove the essential element of a favorable termination of the prior proceeding, I concur in entering final judgment for the defendant.